Katherine **MORABITO**, Juan Orellana, Lucy Rigoglioso, Ida Sandler, Florence Strzelesky, Barbara Bates, Rose Klotz, and Benigno Ortiz, individually and on behalf of all others similarly situated, and the Gray Panthers, Plaintiffs,

v.

Barbara **BLUM**, individually and in her capacity as Commissioner of the New York State Department of Social Services; Richard Schweiker, individually and in his capacity as Secretary of Health and Human Services; James Krauskopf, individually and in his capacity as Commissioner of the New York City Department of Social Services; and Noah Weinberg, as Director of the Rockland County Department of Social Services, Defendants.

No. 80 Civ. 4584.

United States District Court, S. D. New York.

Nov. 25, 1981.

Brooklyn Legal Services Corp. "B", Brooklyn, N.Y., John C. Gray, Jr., and Jane Greengold Stevens, Brooklyn, N.Y., and The Legal Aid Society, Civil Appeals & Law Reform Unit, John Kirklin, and Arthur J. Fried, and Legal Services For The Elderly, Toby Golick, New York City, of counsel, for plaintiffs.

Robert Abrams, Atty. Gen. of N.Y., New York City, for defendant Blum; Amy Juviler, Stanley Camhi, Asst. Attys. Gen., New York City, of counsel.

John S. Martin, Jr., U.S. Atty., S.D.N.Y., New York City, for defendant Schweiker; Nancy Friedman, Asst. U.S. Atty., Frank V. Smith, III, Regional Atty., Dept. of Health and Human Services, Julia T. Reed, Asst. Regional Atty., Dept. of Health and Human Services, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendant Krauskopf; John C. Brennan, Jay B. Itkowitz, Steven Bamundo, Asst. Corp. Counsel, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This action challenges the State of New York's termination of an agreement ("the Section 1634 agreement") entered into by the State of New York and the Secretary of Health and Human Services pursuant to section 1634 of the Social Security Act, 42 U.S.C. § 1383c. It also contests the legality of certain amendments to the State of New York's Medicaid plan; these amendments prohibit Medicaid applicants and recipients from transferring assets in order to become or to remain financially eligible for Medicaid. Plaintiffs move (1) for an order certifying this action as a class action pursuant to Rule 23(c), Fed.R.Civ.P., and (2) for an order granting plaintiffs partial summary judgment pursuant to Rule 56(a), Fed.R. Civ.P. Defendant Barbara Blum, Commissioner of the New York State Department of Social Services, moves for an order dismissing this action either pursuant to Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction, or pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. Alternatively, defendant Blum moves, pursuant to Rule 56(b), Fed.R.Civ.P., for an order granting partial summary judgment in her favor. Defendant James Krauskopf, Commissioner of the New York City Department of Social Services, moves for an order either (1) dropping him from this action, pursuant to Rule 21, Fed.R.Civ.P., on the ground that he is an improper party, or (2) dismissing this action in his regard, pursuant to Rule 12(b)(6), Fed.R.Civ.P., on the ground that plaintiffs have failed to state a claim against defendant Krauskopf upon which relief can be granted. For the reasons hereinafter stated, defendant Blum's motion to dismiss is denied, defendant Krauskopf's motion to dismiss is granted, plaintiffs' motion for partial summary judgment is granted, defendant Blum's motion for partial summary judgment is denied, and plaintiffs' motion for class certification is granted in part and denied in part.

## BACKGROUND

This case involves the complex relationship between two programs that provide assistance to the poor. One program, federally funded and federally administered, provides cash benefits, known as Supplemental Security Income ("SSI"), to needy aged, blind, and disabled individuals. See 42 U.S.C. §§ 1381–1383c (statutory provisions governing SSI program). The SSI program is administered by the Social Security Administration under the auspices of the Department of Health and Human Services ("DHHS"). The second program provides medical assistance ("Medicaid") to the poor. See 42 U.S.C. §§ 1396–1396k (statutory provisions governing Medicaid program). The Medicaid program is funded and administered jointly by the federal government (through DHHS) and participating state governments.

The statutory provisions governing the Medicaid program provide for federal reimbursement of state governments for a portion of the costs of providing medical assistance to the needy. These provisions also set out the basic requirements that state medical assistance programs must meet in order to receive such reimbursement. Generally, states wishing to receive reimbursement under the Medicaid program must at least provide medical assistance to any individual eligible for cash public assistance benefits under the Social Security Act. 42 U.S.C. § 1396a(a)(10)(A). In other words, Medicaid eligibility is, to a certain extent, determined by criteria set forth in federal law, namely, the Social Security Act.[1] An exception to this rule, enacted in section 209(b) of the Social Security Act Amendments of 1972, 42 U.S.C. § 1396a(f) ("Section 209(b)"), is that states, may, if they choose to do so, make their own determinations whether SSI recipients (one of the two classes of persons that receive cash public assistance benefits under the Social Security Act) qualify for Medicaid.[2] States that choose the "Section 209(b) option" may use stricter standards to determine the Medicaid eligibility of SSI recipients than are used to determine SSI eligibility, subject to the limitation that a Section 209(b) state may not adopt eligibility criteria narrower than the standards that governed Medicaid eligibility in that state as of January 1, 1972. *Id.*[3]

When the SSI program went into effect on January 1, 1974, the State of New York did not choose the Section 209(b) option. Instead, pursuant to the Section 1634 agreement, it agreed to accept federal determinations of SSI eligibility as determinative of Medicaid eligibility, and thus to provide Medicaid automatically to all SSI recipients living in New York.[4] Beginning in January 1974, then, New York SSI recipients received Medicaid without having to make separate Medicaid applications and without having to undergo periodic redeterminations of Medicaid eligibility.

On April 30, 1980, defendant Blum notified DHHS that the State of New York intended to terminate the Section 1634 agreement as of August 29, 1980. By this action, the State of New York intended to put itself in a position to exercise the Section 209(b) option, under which it would be permitted to develop its own criteria for deciding the Medicaid eligibility of SSI recipients and to make its own determinations of Medicaid eligibility pursuant to such criteria. The State of New York desired to avail itself of the Section 209(b) option for

1. The criteria set forth in the Social Security Act govern how *narrowly* participating states may limit Medicaid eligibility. If a participating state so desires, it may extend Medicaid eligibility beyond those persons eligible for cash public assistance under the Social Security Act (the so-called "categorically needy," *see* 42 C.F.R. § 435.4) to persons who would be eligible for such assistance but for the fact that their incomes or resources, while insufficient to pay for necessary medical care, exceed the financial eligibility requirements imposed by the Social Security Act. These persons are known in Medicaid parlance as the "medically needy." *See id.* Upon deciding to participate in the Medicaid program, the State of New York elected to extend Medicaid eligibility to the medically needy as well as the categorically needy, and today continues to grant Medicaid eligibility to the medically needy as long as they meet the eligibility requirements set forth in N.Y.Soc.Serv.Law § 366.

2. The only federal cash public assistance benefit program that triggers Medicaid eligibility under 42 U.S.C. § 1396a(a)(10)(A) besides the SSI program is a program that provides cash benefits, known as Aid to Families with Dependent Children ("AFDC"), to certain dependent children living in the homes of either their parents or relatives. *See* 42 U.S.C. §§ 601–613 (statutory provisions governing AFDC program).

3. As is discussed in text *infra*, the State of New York availed itself of the Section 209(b) option as of September 2, 1980. In so doing, it joined twenty-one other states that have chosen the Section 209(b) option and accordingly make their own determinations of the Medicaid eligibility of SSI recipients.

4. As noted earlier, the State of New York also provides Medicaid to AFDC recipients, *see* note 2 *supra*, and to persons who would be eligible to receive SSI or AFDC but for the fact that their incomes or resources, while insufficient to pay for necessary medical expenses, exceed the financial eligibility requirements imposed by the Social Security Act. *See* note 1 *supra*.

the following reason. Under New York law, a person is eligible for medical assistance such as Medicaid only if he or she has not made "a voluntary transfer of property . . . for the purpose of qualifying for such assistance." N.Y.Soc.Serv.Law § 366.1(e). The State of New York believed, in view of the fact that the federal statutes governing SSI eligibility contained no transfer-of-assets provision similar to that codified in N.Y.Soc.Serv.Law § 366.1(e), that New York's transfer-of-assets provision could only be enforced against Medicaid recipients and applicants by freeing the State of New York from the requirement that it accept federal determinations of SSI eligibility as determinative of Medicaid eligibility.[5] This could only be accomplished by terminating the Section 1634 agreement and exercising the Section 209(b) option.

As noted, defendant Blum notified DHHS of the State of New York's intention to terminate the Section 1634 agreement in a letter dated April 30, 1980. In June 1980, defendant Blum sent DHHS the State of New York's proposed amendments to its Medicaid program, which amendments contained a transfer-of-assets provision based on N.Y.Soc.Serv.Law § 366.1(e). On July 8, 1980, defendant Blum notified the New York state legislature of the anticipated termination of the Section 1634 agreement and of the planned rule changes. Notice of these events was published in the *New York State Register* on July 23, 1980. The Section 1634 agreement was terminated, as planned, as of the close of business on August 29, 1980. The State of New York exercised the Section 209(b) option on September 2, 1980. Since that date, all Medicaid applications, including those filed by SSI recipients, have been determined solely by the State of New York pursuant to criteria set forth in the New York Social Services Law. In September 1980, the State of New York began subjecting all persons who formerly had been granted Medicaid eligibility on the basis of their SSI eligibility to a "recertification" process; this process is designed to ascertain whether these persons continue to enjoy Medicaid eligibility under the newly applicable criteria.

The instant litigation, which was commenced as a class action by a complaint filed in this Court on August 8, 1980, is based on two distinct legal theories. First, plaintiffs contend that N.Y.Soc.Serv.Law

---

5. The State of New York took this view in response to the decision of Judge Munson in *Caldwell v. Blum*, No. 78–CV–569 (N.D.N.Y. Dec. 3, 1979), *aff'd*, 621 F.2d 491 (2d Cir. 1980), *cert. denied*, 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981). There, Judge Munson preliminarily enjoined defendant Blum from enforcing the transfer-of-assets provision contained in N.Y.Soc.Serv.Law § 366.1(e) against "medically-needy" Medicaid recipients. (For an explanation of the term "medically needy," see note 1 *supra*.) His decision was based on 42 U.S.C. § 1396a(a)(10)(C)(i), which obligates states that have elected to provide Medicaid to the medically needy to determine the Medicaid eligibility of the medically needy by use of comparable standards to those used to determine the Medicaid eligibility of the "categorically needy." (For an explanation of the term "categorically needy," see note 1 *supra*.) Since SSI recipients were categorically needy, and were not subject to a transfer-of-assets provision, Judge Munson reasoned that, insofar as the State of New York sought to apply a transfer-of-assets provision to medically-needy Medicaid recipients, it was endeavoring to apply a noncomparable eligibility standard. He consequently preliminarily enjoined application of the transfer-of-assets provision contained in N.Y.Soc.Serv.Law § 366.-1(e) to medically-needy Medicaid applicants and recipients. The State of New York, faced with this decision, concluded that it could apply the transfer-of-assets provision contained in N.Y.Soc.Serv.Law § 366.1(e) to medically-needy Medicaid recipients only if it could also apply this provision to categorically-needy Medicaid recipients; it further determined that the provision could be applied to categorically-needy Medicaid recipients only if the State of New York terminated the Section 1634 agreement, chose the Section 209(b) option, and commenced making its own determinations of the Medicaid eligibility of SSI recipients. Defendant Blum thereupon notified DHHS of the State of New York's intention to terminate the Section 1634 agreement, which notification began the course of events that culminated in this lawsuit being filed. Ironically, the federal government has since amended section 1613 of the Social Security Act, 42 U.S.C. § 1382b, to make SSI eligibility subject to a transfer-of-assets provision similar to that contained in N.Y. Soc.Serv.Law § 366.1(e). *See* Social Security Act Amendments of 1980, Pub.L.No. 96–611, § 5, 94 Stat. 3566 (1980).

§ 366.1(e), insofar as it denies Medicaid eligibility to persons who transfer assets, is invalid and unenforceable. The Court does not reach this issue by today's decision. Second, plaintiffs challenge the manner in which defendant Blum, in order to enforce N.Y.Soc.Serv.Law § 366.1(e), terminated the Section 1634 agreement. The individual named plaintiffs are residents of New York who are at least sixty-five years of age, or blind, or disabled. They are recipients of SSI, or Medicaid, or both. The Gray Panthers, the other named plaintiff, is an organization of elderly citizens that includes in its membership many individuals who are eligible for SSI, or Medicaid, or both. The complaint names as defendants the Commissioner of the New York State Department of Social Services (Bàrbara Blum), the Secretary of DHHS (now Richard Schweiker), the Commissioner of the New York City Department of Social Services (now James Krauskopf), and the Director of the Rockland County Department of Social Services (Noah Weinberg). The action was dismissed as to defendant Weinberg by an order filed November 12, 1980.

This case has been the subject of a substantial motion practice. In August 1980, plaintiffs filed a motion for an order certifying the action as a class action and for a preliminary injunction enjoining termination of the Section 1634 agreement and enforcement of the transfer-of-assets provision contained in N.Y.Soc.Serv.Law § 366.-1(e). The Court deferred decision on the class action branch of plaintiffs' motion, and, in an oral decision rendered at the conclusion of a two-day hearing, denied the motion insofar as it sought a preliminary injunction. *Morabito v. Blum*, No. 80 Civ. 4584 (RJW) (S.D.N.Y. Aug. 27, 1980). Undaunted, plaintiffs promptly moved, pursuant to Rule 56(a), Fed.R.Civ.P., for an order granting plaintiffs partial summary judgment by upholding their claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. Defendant Blum responded by filing a motion for an order dismissing plaintiffs' complaint, either pursuant to Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction, or

pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. Alternatively, defendant Blum's motion sought an order pursuant to Rule 56(b), Fed.R.Civ.P., granting her partial summary judgment by rejecting plaintiffs' claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. Defendant Krauskopf moved (1) for an order, pursuant to Rule 21, Fed.R. Civ.P., dropping him from this action on the ground that he is an improper party, or (2) for an order, pursuant to Rule 12(b)(6), Fed. R.Civ.P., dismissing the action in his regard for failure to state a claim upon which relief can be granted. The class action branch of plaintiffs' original motion, together with all the subsequently filed motions, are the subjects of today's decision.

## DISCUSSION

For the sake of convenience, the Court has determined not to deal with the motions presently before it in the order in which they were filed, but rather in the following sequence: (1) defendant Blum's motion to dismiss; (2) defendant Krauskopf's motion to dismiss; (3) plaintiffs' motion and defendant Blum's cross-motion for partial summary judgment; and (4) plaintiffs' motion for certification of this action as a class action.

### Defendant Blum's Motion to Dismiss

As noted, defendant Blum moves for an order dismissing this action either pursuant to Rule 12(b)(1), Fed.R.Civ.P., for lack of subject matter jurisdiction, or pursuant to Rule 12(b)(6), Fed.R.Civ.P., for failure to state a claim upon which relief can be granted. In support of the first branch of her motion, defendant Blum argues that subject matter jurisdiction does not lie under 28 U.S.C. § 1331 because the amount in controversy does not exceed $10,000, and that 28 U.S.C. § 1343 is insufficient to form a basis for jurisdiction because the statute relied upon herein, the Social Security Act, is not a statute securing "equal rights" or "civil rights" within the meaning of 28 U.S.C. § 1343(3) & (4). Defendant Blum's

Rule 12(b)(1) argument also relies on judicial precedent holding that subject matter jurisdiction is lacking under either 28 U.S.C. § 1331 or 28 U.S.C. § 1343 where the complaint fails to state a substantial federal claim.

■ Subsequent to the filing of defendant Blum's motion, the Federal Question Jurisdictional Amendments Act of 1980, Pub.L.No. 96–486, 94 Stat. 2369 (1980), was enacted into law. This statute eliminated the amount-in-controversy requirement from 28 U.S.C. § 1331, rendering the statutory aspect of defendant Blum's subject-matter-jurisdiction argument meritless.[6] See id. § 2. Equally meritless is defendant Blum's contention that plaintiffs' complaint must be dismissed under Rule 12(b)(1) for failure to state a substantial federal claim. While there is judicial authority for the proposition that dismissal for lack of subject matter jurisdiction is appropriate where the complaint fails to allege a substantial federal claim, 13 C. Wright & A. Miller, *Federal Practice and Procedure* § 3564 (1975); *see Hagans v. Lavine*, 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), it is well settled that such dismissals should be confined to cases where the complaint on its face, without resort to extraneous matter, is so plainly insubstantial as to be devoid of any merit, enabling the court to conclude that the claim asserted is patently frivolous or wholly insubstantial. *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946); *Giulini v. Blessing*, 654 F.2d 189, 192 (2d Cir. 1981). Given the Court's conclusion *infra* that plaintiffs are entitled to summary judgment with respect to a part of their claim, it goes without saying that the Court regards the complaint to state a substantial federal claim within the meaning of the above-cited cases.

■ The second branch of defendant Blum's motion to dismiss contends that, for a variety of reasons, plaintiffs are without standing to present certain of the claims set forth in their complaint. Defendant Blum's standing argument does not suggest that no private right of action exists to challenge her alleged violations of the Social Security Act and the regulations promulgated thereunder; it is well settled that 42 U.S.C. § 1983, relied on by plaintiffs here, provides such a private right of action. *See Maine v. Thiboutot*, 448 U.S. 1, 4, 100 S.Ct. 2502, 2504, 65 L.Ed.2d 555 (1980). Instead, defendant Blum argues that plaintiffs lack standing because they have not suffered a sufficient direct injury as the result of defendant Blum's allegedly unlawful conduct to be permitted to utilize the remedy concededly afforded by 42 U.S.C. § 1983. At the present time, it is only necessary for the Court to decide whether plaintiffs have standing to present the claim that is the subject of the motion and cross-motion for partial summary judgment pending before the Court. In other words, the immediate question for the Court is whether plaintiffs have standing to claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. The Court leaves until another day the question of plaintiffs' standing to challenge the enforceability of the transfer-of-assets provision contained in N.Y.Soc.Serv.Law § 366.1(e).

■ The principles that guide the Court's determination of plaintiffs' standing to challenge the lawfulness of defendant Blum's termination of the Section 1634 agreement are familiar. The basic question when standing is at issue is whether the plaintiff has alleged "such a personal stake in the outcome of the controversy" as to warrant *his or her* invocation of federal-court jurisdiction, and to justify exercise of the court's remedial powers on *his or her* behalf. *Baker v. Carr*, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663 (1962). A federal court's jurisdiction can be invoked, then, only when the plaintiff himself or herself has suffered some threatened or actual injury resulting from the putatively illegal action. *Warth v. Seldin*, 422 U.S.

---

6. The Court notes that section 4 of this act expressly makes the elimination of the $10,000 amount-in-controversy requirement applicable. to actions, such as this one, that were pending when the act became law. *See* 28 U.S.C. § 1331 note.

490, 499, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975).

■ Upon applying these principles to the facts of this case, the Court is convinced that all the named plaintiffs have standing to challenge the lawfulness of defendant Blum's termination of the Section 1634 agreement. Here, all of the nine individual named plaintiffs were eligible for Medicaid as of August 29, 1980. They have standing to challenge the validity of the termination of the Section 1634 agreement because, having been eligible for Medicaid on August 29, 1980, they have standing to present both claims pursuant to which plaintiffs contend that the termination was invalid. Specifically, they have standing to object to defendant Blum's alleged failure to consult with a properly constituted medical care advisory committee, and standing as well to object to defendant Blum's alleged failure to give the requisite public notice of the termination of the Section 1634 agreement, because both the consultation requirement and the public notice requirement exist to protect the interests of Medicaid recipients. As is noted at length *infra* in the Court's discussion of the parties' cross-motions for partial summary judgment, the courts have consistently allowed claims such as the instant challenge to the validity of the termination of the Section 1634 agreement to be raised by Medicaid recipients.

Moreover, eight of the nine individual named plaintiffs are SSI recipients who had applied for and were receiving SSI as of August 29, 1980, meaning that, before termination of the Section 1634 agreement, these eight plaintiffs were automatically eligible to receive Medicaid. In the Court's view, the termination of the Section 1634 agreement worked a direct injury on these eight plaintiffs, as it did on all persons who formerly enjoyed automatic Medicaid eligibility on account of their SSI eligibility, merely by imposing on them the burden of having their Medicaid eligibility recertified. In other words, these plaintiffs, by alleging that the termination of the Section 1634 agreement has forced them to endure duplicative bureaucratic procedures that heretofore were not imposed on them,[7] have thereby alleged an injury that is sufficiently direct to permit them to challenge the validity of defendant Blum's termination of the Section 1634 agreement.

The other named plaintiff is the Gray Panthers, an organization dedicated to helping the elderly of the United States. The membership of the Gray Panthers includes New York residents who, as of August 29, 1980, were recipients of SSI, or Medicaid, or both. Since the Gray Panthers has thereby alleged and proved that, under the principles set forth above, some of its members have standing to challenge the procedure by which defendant Blum terminated the Section 1634 agreement, the organization itself has standing to present this challenge. *Schweiker v. Gray Panthers,* —— U.S. ——, 101 S.Ct. 2633, 2638 n.8, 69 L.Ed.2d 460 (1981).

In sum, the Court holds that it has subject matter jurisdiction over this action insofar as it challenges the lawfulness of defendant Blum's termination of the Section 1634 agreement, and further holds that all the named plaintiffs have standing to present this challenge. Defendant Blum's

7. In other words, the Court does not believe that plaintiffs, in order to have suffered a sufficient direct injury to have standing to object to the termination of the Section 1634 agreement, must have been either denied Medicaid or threatened with such a denial as a result of the termination. For plaintiffs to have standing to challenge the lawfulness of the termination, as distinct from having standing to challenge the enforceability of the new eligibility criteria made possible by the termination, they need only have suffered *some* direct injury as a result of the termination. In the Court's view, the fact that none of the named plaintiffs have been denied Medicaid eligibility as a result of the termination of the Section 1634 agreement and the new eligibility criteria promulgated in connection therewith might form the predicate for an argument that plaintiffs do not have standing to challenge the validity and enforceability of the new eligibility criteria. The Court has no need to decide this issue in order to resolve the present motion and cross-motion for partial summary judgment, and accordingly denies defendant Blum's motion to dismiss without prejudice insofar as it makes this argument. *See* text *infra.*

motion to dismiss is accordingly denied insofar as it seeks dismissal of plaintiffs' claim challenging the lawfulness of defendant Blum's termination of the Section 1634 agreement, and is denied without prejudice insofar as it seeks dismissal of any other claims set forth in plaintiffs' complaint.

### Defendant Krauskopf's Motion to Dismiss

■■■ Defendant Krauskopf moves (1) for an order, pursuant to Rule 21, Fed.R. Civ.P., dropping him from this action on the ground that he is an improper party, or (2) for an order, pursuant to Rule 12(b)(6), Fed. R.Civ.P., dismissing the complaint in his regard for failure to state a claim upon which relief can be granted. The Court agrees that plaintiffs' complaint fails to state a claim against defendant Krauskopf. The complaint, which is forty-three pages long and contains 164 allegational paragraphs followed by an eleven-point decretal paragraph, specifically mentions defendant Krauskopf only in the caption, where he is named as a defendant, and in paragraph eighty-two, where he is identified as the Commissioner of the New York City Department of Social Services. Plaintiffs make no allegations whatsoever that defendant Krauskopf acted or omitted to act in any particular fashion. In short, the complaint provides no basis for anyone, including the Court and defendant Krauskopf, to ascertain why plaintiffs think that Krauskopf has violated the law in some manner or acted in some fashion so as to injure plaintiffs. The courts have consistently held that, where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted. *Gutierrez v. Vergari*, 499 F.Supp. 1040, 1052 (S.D. N.Y.1980); *Holloway v. Carey*, 482 F.Supp. 551, 553 (S.D.N.Y.1979); *Child v. Beame*, 417 F.Supp. 1023, 1025 (S.D.N.Y.1976). This rule accords with the principle that a complaint does not contain the "short and plain statement of the claim" required by Rule 8(a)(2), Fed.R.Civ.P., unless it contains something more by way of a claim for relief than a bare averment that the pleader wants relief and is entitled to it. 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 125 (1969). Accordingly, the Court grants defendant Krauskopf's motion, pursuant to Rule 12(b)(6), Fed.R. Civ.P., for an order dismissing the complaint in his regard. Plaintiffs shall have leave to replead with respect to defendant Krauskopf by serving and filing an amended complaint within thirty (30) days of the date of this decision.[8]

### Parties' Cross-Motions for Partial Summary Judgment

As noted, plaintiffs have moved, pursuant to Rule 56(a), Fed.R.Civ.P., for an order granting plaintiffs partial summary judgment by upholding their claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. Defendant Blum has cross-moved, pursuant to Rule 56(b), Fed.R.Civ.P., for an order granting her partial summary judgment by rejecting plaintiffs' claim that defendant Blum acted

---

**8.** Plaintiffs vigorously argue that, whereas the Court cannot, consistent with the eleventh amendment to the Constitution, order defendant Blum to pay retroactive Medicaid to plaintiffs, *see Florida Department of Health and Rehabilitative Services v. Florida Nursing Home Association*, 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), defendant Krauskopf enjoys no such immunity. The Court notes first that defendant Blum has not relied on the eleventh amendment in opposing the relief sought by plaintiffs. *See* note 22 *infra*. Moreover, plaintiffs' argument, while possibly meritorious, *see Holley v. Lavine*, 605 F.2d 638, 642–45 (2d Cir. 1979),

cert. denied, 446 U.S. 913, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1980), is entirely beside the point. The complaint, as presently drafted, simply gives no indication of what defendant Krauskopf has done or failed to do that makes him liable to pay such retroactive Medicaid. While the Court has a suspicion that plaintiffs have a claim against defendant Krauskopf, it is presently incapable of even articulating that claim, not to mention of passing on its legal sufficiency. Plaintiffs, in the event they decide to replead, should concentrate their efforts on explaining precisely what law defendant Krauskopf is alleged to have violated, and on stating what defendant Krauskopf did or did not do that caused the violation to occur.

unlawfully in terminating the Section 1634 agreement. Plaintiffs proffer two distinct legal theories in challenging the termination of the Section 1634 agreement. The first is that the decision to terminate was reached without proper consultation with the State of New York's medical care advisory committee. The second is that defendant Blum failed to publish timely public notice of the termination of the Section 1634 agreement. The Court discusses these theories in turn below.

### A. Consultation With the MAC

Every state that wishes to participate in the Medicaid program is required to create a medical care advisory committee as a condition of its participation. 42 C.F.R. § 431.12(b). The State of New York has created such a committee, known as the Medical Advisory Committee ("the MAC") by statute. See N.Y.Soc.Serv.Law § 365–c. Plaintiffs' argument is (1) that defendant Blum had a duty to consult with the MAC in connection with the decision to terminate the Section 1634 agreement, and (2) that defendant Blum failed to meet this duty, making the termination of the Section 1634 agreement unlawful.

The first question for the Court's decision is whether defendant Blum was required to consult with the MAC in connection with the decision to terminate the Section 1634 agreement. The regulations state that medical care advisory committees exist "to advise the Medicaid agency about health and medical care services."[9] 42 C.F.R. § 431.12(a). Specifically, a committee such as the MAC "must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program." Id. § 431.12(e).

The Court thus must determine whether defendant Blum's decision to terminate the Section 1634 agreement raised questions of "program administration" or "policy development" within the meaning of this regulation. The Court rejects defendant Blum's vigorous argument that, while the advisory authority of medical care advisory committees extends to decisions that may impact on the *quality* of health care services rendered under the Medicaid program, such committees need not be consulted regarding decisions that may affect the *eligibility* of Medicaid recipients. Nothing in the Medicaid statute or in the decided cases points to such a quality/eligibility distinction.[10] The federal guidelines on the administration of the Medicaid program reject such a distinction, stating that medical care advisory committees "may appropriately consider a wide range of topics," and that "[a]ll policy proposals, including revisions of existing policy" are within the advisory authority of such committees. Department of Health, Education, and Welfare, *Medical Assistance Manual* 8 [hereinafter cited as *Medical Assistance Manual*]. Indeed, these guidelines list issues regarding the "quality of care" as just one of eight topics with which medical care advisory committees should be concerned. Id. One commentator has stated that "[i]t is clear from the guidelines that

9. The "Medicaid agency" referred to is the state agency administering or supervising the administration of a state medicaid plan. 42 C.F.R. § 430.1. The "Medicaid agency" for the State of New York is the New York State Department of Social Services, of which defendant Blum is presently the Commissioner.

10. Defendant Blum argues that, in the cases where state officials were held to have acted unlawfully by failing to consult with the relevant medical care advisory committee, the state action that triggered the duty to consult always involved the quality of medical services rendered under the Medicaid program, and not eligibility to participate in the Medicaid program. However, in Clark v. Gibbs, No. C81–

219R, slip op. at 7 8 (W.D.Wash. June 3, 1981) and *Dunn v. Ginsberg*, [1981 -1] Medicare & Medicaid Guide (CCH) ¶ 30,802 (S.D.W.Va. July 23, 1980), both courts found a breach of the duty to consult the medical care advisory committee where the state action in question would have ended coverage of the medically needy, and thus plainly involved a question of Medicaid eligibility. (For an explanation of the term "medically needy," see note 1 *supra*.) Further, defendant Blum has pointed the Court to no statement in any of the decided cases indicating that the quality/eligibility distinction that she would have the Court adopt has any legal merit whatsoever.

[DHHS] envisions that no significant program or policy change will be made by a state until [the medical care advisory committee] is consulted," and has concluded that a regulation or statute that affects or is designed to affect Medicaid eligibility is an example of state Medicaid action requiring committee input. Rosenbaum, *Administration of a State Medicaid Program: The Role of the Medical Care Advisory Committee*, 11 Clearinghouse Rev. 918, 920 & n.11 (1978).

Nowhere in the statute establishing the Medicaid program are states expressly required to establish medical care advisory committees. Defendant Blum's putative quality/eligibility distinction is not supported by reference to the statutory provisions that are intended to be served by requiring states participating in the Medicaid program to constitute such committees. The statutory authority for the regulation requiring that medical care advisory committees be established is 42 U.S.C. § 1396a(a)(19), which provides that the state medical assistance plan must "provide such safeguards to ensure that eligibility for care and services under the plan will be determined, and such care and services will be provided in a manner consistent with simplicity of administration and the best interests of the recipients," and also 42 U.S.C. § 1396a(a)(22)(D), which requires that the state medical assistance plan describe the "standards and methods that the State will use to assure that medical or remedial care and services provided to recipients and medical assistance are of high quality." Plainly, if medical care advisory committees are designed to carry out these statutory provisions, such committees should have input with respect to issues of Medicaid eligibility as well as the quality of services rendered under the Medicaid program.

In sum, on the basis of the language of the regulation, the guidelines issued thereunder, and the statutory provisions that medical care advisory committees exist to serve, the Court concludes that the scope of such committees' advisory authority is intended to cover the entire field of state decision-making with respect to the Medicaid program, and is not limited to discrete areas of concern such as the quality of medical assistance rendered under the program. *Accord*, Rosenbaum, *supra*, 11 Clearinghouse Rev. at 919. The Court therefore holds that the decision to terminate the Section 1634 agreement involved "policy development" and "program administration" within the meaning of 42 C.F.R. § 431.12(e). Defendant Blum was thus required to consult with the MAC in connection with that decision.[11]

This brings the Court to the question whether defendant Blum satisfied the consultation requirement. The cases are unanimous that, where consultation with the medical care advisory committee is required, the committee's input must be sought and received *before* the state action in question, and not after the fact. *Jennings v. Alexander*, [1981–1] Medicare & Medicaid Guide (CCH) ¶ 30,735, at 9163–64 (M.D.Tenn. Sept. 3, 1980); *Dunn v. Ginsberg, supra* note 10, [1981–1] Medicare & Medicaid Guide (CCH) at 9465; *Becker v. Toia*, 439 F.Supp. 324, 332–33 (S.D.N.Y. 1977); *Ho v. Chang*, [1977] Medicare & Medicaid Guide (CCH) ¶ 28,433, at 9526–27 (D.Hawaii Apr. 27, 1977); *Robinson v. Maher*, [1976] Medicare & Medicaid Guide (CCH) ¶ 27,707, at 9052–53 (D.Conn. Jan. 19, 1976). *See also Medical Assistance Manual, supra*, at 16 (state agency must "consult the [medical care advisory committee] *before* initiating programs and *before* taking action within the realm of any of its designated functions") (emphasis added). The requirement of *prior* consultation is rooted in the

11. Defendant Blum's proposed quality/eligibility distinction is not only contrary to the plain meaning of the regulation, the federal guidelines issued under the regulation, and the judicial and scholarly interpretations of the regulation; it also defies logic. It would be wholly

anomalous to hold that the advisory authority of medical care advisory committees encompasses state action that *reduces* Medicaid coverage (*i.e.*, questions of quality), but not state action that *eliminates* Medicaid coverage entirely (*i.e.*, questions of eligibility).

fact that medical care advisory committees are purely advisory in nature, having no power either to ratify or to veto any action that the state Medicaid agency proposes to take. *Benton v. Rhodes*, 586 F.2d 1, 3 (6th Cir. 1978), *cert. denied*, 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979). Thus, the only way that medical care advisory committees can be given the "meaningful participation" that is required by 42 C.F.R. § 431.12(e) is to consult them prior to the action in question.

There is some dispute among the parties as to whether the requirement of *prior* consultation with the medical care advisory committee can be satisfied by a consultation that occurs *after* the state decision in question has been made, but *before* it has been implemented. That is, defendant Blum, while conceding that consultation is adequate only if it occurs before the fact,

contends that this rule only required her to consult with the MAC at some time before August 29, 1980, the date when defendant Blum's decision to terminate the Section 1634 agreement was *implemented.* Plaintiffs argue, on the other hand, that the requisite consultation had to occur before defendant Blum *decided* to terminate the Section 1634 agreement, that is, some time before April 30, 1980. The Court need not decide this question, because the record in this case demonstrates that the consultation requirement imposed by 42 C.F.R. § 431.12(e) was not satisfied here prior to either date.[12] The termination of the Section 1634 agreement was discussed at a meeting of the MAC on only one occasion prior to August 29, 1980; however, at that time (July 14, 1980) the MAC included no Medicaid recipients as members and hence concededly was not properly constituted.[13]

12. The Court notes that the case law supports a rule that consultation with the medical care advisory committee, where required, generally should occur before the state action that triggers the duty to consult is *decided upon*, not merely before such action is *implemented. See Jennings v. Alexander, supra*, [1981–1] Medicare & Medicaid Guide (CCH) at 9163–64 (medical care advisory committee "should have been afforded the opportunity to fully participate in considering all available alternatives from the time it first became evident that reductions in expenditures were necessary"); *Ho v. Chang, supra*, [1977] Medicare & Medicaid Guide (CCH) at 9525–26 (holding that consultation should have occurred before state "made," rather than implemented, decisions in question); *Becker v. Toia, supra*, 439 F.Supp. at 332 -33 (holding that consultation should have occurred prior to enactment, not implementation, of statute in question). *See also Medical Assistance Manual, supra*, at 16 (state agency must "consult the [medical care advisory committee] before *initiating* programs" that trigger duty to consult) (emphasis added); Rosenbaum, *supra*, 11 Clearinghouse Rev. at 919–20 ("when agency action constitutes a major policy decision, the agency is required to obtain [medical care advisory committee] input *from the inception*, in forming and executing such policy") (emphasis in original). Such a general rule would accord with the principle that, for medical care advisory committees to have the intended "meaningful participation" in the decision-making process, they must be consulted at the beginning of that process. Generally, these committees, being merely advisory, cannot realistically participate once the state agen-

cy has chosen a particular course of action. To be sure, a particular case may present persuasive arguments for making an exception to this rule. *See, e.g., Seniors United for Action v. Ray*, No. 80–4064, slip op. at 11–12 (N.D. Iowa June 30, 1981) (post-legislation consultation with medical care advisory committee sufficient where it occurred before determination of rules that would implement legislation); *Budnicki v. Beal*, 450 F.Supp. 546, 558 (E.D.Pa. 1978) (post-decisional consultation with medical care advisory committee sufficient where decision was later invalidated on other procedural grounds and then restored after these other procedural prerequisites had been satisfied; in this context, consultation had really occurred before decision was made). Nevertheless, the Court is convinced that the presumption should be in favor of predecisional consultation.

13. The regulations governing medical care advisory committees contain the following provision regarding committee membership:

The committee must include—

(1) Board-certified physicians and other representatives of the health professions who are familiar with the medical needs of low-income . population groups and with the resources available and required for their care;

(2) Members of consumers' groups, including Medicaid recipients, and consumer organizations such as labor unions, cooperatives, consumer-sponsored prepaid group practice plans, and others; and

(3) The director of the public welfare department or the public health department, whichever does not head the Medicaid agency.

The courts have consistently held that a state has not satisfied its duty to meet with the medical care advisory committee if the committee was improperly constituted when it was consulted. *Jennings v. Alexander, supra*, [1981–1] Medicare & Medicaid Guide (CCH) at 9164; *Dunn v. Ginsberg, supra* note 10, [1981–1] Medicare & Medicaid Guide (CCH) at 9465; *Becker v. Toia, supra*, 439 F.Supp. at 332; *Dominguez v. Milliken*, [1973] Medicare & Medicaid Guide (CCH) ¶ 26,633, at 9122–23 (W.D.Mich. Mar. 19, 1973). As a result, the Court holds that defendant Blum did not, in this case, consult with the MAC in the fashion required by 42 C.F.R. § 431.12(e).

■ Defendant Blum next contends that, even if she had a duty to consult with the MAC in connection with the termination of the Section 1634 agreement, and even if the requisite consultation did not occur, she is still entitled to summary judgment on this issue because plaintiffs herein are without standing to complain of this unlawful conduct. This argument is founded on an egregious misreading of Judge Lasker's decision in *Hospital Association of New York State, Inc. v. Toia*, 473 F.Supp. 917 (S.D.N.Y.1979). There, as here, plaintiffs sought to enjoin implementation of certain amendments to the State of New York's Medicaid plan; in similar fashion to the instant case, both the Commissioner of the New York State Department of Social Services and the Secretary of DHHS (then called the Department of Health, Education, and Welfare) were among the named defendants. Plaintiffs alleged, as one of several grounds in support of their action, that the requisite consultation with the MAC had not occurred prior to implementation of the amendments in question. Judge Lasker held that a failure by the State of New York to consult with the MAC prior to amending the state Medicaid plan cannot, on the theory that DHHS should not have approved the amendments unless the requisite consultation had occurred, provide a

basis for an action against DHHS. *Id.* at 940. He then commented that, "though the State's failure to work with [the] MAC is deplorable, if not explicitly illegal, the appropriate remedy is the commencement of a compliance proceeding, not the undoing of [DHHS's] approval." *Id.* Defendant Blum interprets this statement to hold that a failure to consult with a medical care advisory committee may only be redressed through a compliance proceeding brought by DHHS under 45 C.F.R. § 201.6(a)(2). In fact, Judge Lasker clearly recognized that a failure to consult with the MAC may be remedied through a federal court action brought by Medicaid recipients. In an earlier decision rendered in the same litigation, Judge Lasker, commenting on two cases where Medicaid recipients successfully brought such actions, observed: "Neither case stands for the proposition that a state's failure to consult a medical [care] advisory committee is fatal to [DHHS] approval. Rather, they hold that such an omission entitles [Medicaid recipients] to seek an injunction against the State, on the grounds of non-compliance." *Hospital Association of New York State, Inc. v. Toia*, 438 F.Supp. 866, 875 (S.D.N.Y.1977). Thus, while Judge Lasker's decisions in this earlier litigation may provide a basis for a motion to dismiss filed on behalf of defendant Schweiker, *see* Rosenbaum, *supra*, 11 Clearinghouse Rev. at 920 n.11, they provide no support whatsoever for a judgment in favor of defendant Blum.

In sum, the Court holds that defendant Blum had a duty to consult with the MAC in connection with the decision to terminate the Section 1634 agreement, that defendant Blum failed to comply with that duty, and that plaintiffs herein, being individuals who were eligible for Medicaid on the termination date and an organization having such individuals as members, may bring an action such as this to remedy defendant Blum's non-compliance. Accordingly, the Court holds that defendant Blum acted unlawfully in terminating the Section 1634 agreement.

42 C.F.R. § 431.12(d). Defendant Blum has conceded that this regulation requires a medical care advisory committee to include Medic-

aid recipients among its members, and that the MAC included no Medicaid recipients at any relevant time prior to August 29, 1980.

### B. Public Notice

Plaintiffs' second theory that the termination of the Section 1634 agreement was unlawful is predicated on their argument that defendant Blum failed to comply with applicable federal and state public notice requirements in connection with the decision to effect this termination. It is conceded that the only public notice of the impending termination of the Section 1634 agreement occurred on July 23, 1980, when details concerning the termination were published in the *New York State Register.* This was well after defendant Blum decided to terminate the Section 1634 agreement, and just thirty-seven days before the termination actually occurred.

The federal public notice requirement relied on by plaintiffs is contained in 42 C.F.R. § 447.205 ("Section 447.205"). This section reads as follows:

(a) *When notice is required.* Except as specified in paragraph (b) of this section, the agency must provide public notice of any proposed change in the Statewide method or level of reimbursement for a service, if the change is expected to increase or decrease Medicaid payments for that service by 1 percent or more during the 12 months following the effective date of the change.

(b) *When notice is not required.* Notice is not required if—

(1) The change is being made to conform to Medicare methods or levels of reimbursement;

(2) The change is required by court order; or

(3) The change is based on changes in wholesalers' or manufacturers' prices of drugs or materials, if the agency's reimbursement system is based on material cost plus a professional fee.

(c) *Content of notice.* The notice must—

(1) Describe the proposed change in method or level of reimbursement;

(2) Give an estimate of any expected increase or decrease in annual aggregate expenditures;

(3) Explain why the agency is changing its reimbursement methodology or level of reimbursement;

(4) Identify a local agency in each county (such as the social services agency or health department) where copies of the proposed changes are available for public review;

(5) Give an address where written comments may be sent and reviewed by the public; and

(6) If there are public hearings, give the location, date and time for hearings or tell how this information may be obtained.

(d) *Publication of notice.* The notice must—

(1) Be published at least 60 days before the proposed effective date of the change;

(2) Appear as a public announcement in—

(i) A State register similar to the *Federal Register* ;

(ii) The newspaper of widest circulation in each city with a population of 50,000 or more; or

(iii) The newspaper of widest circulation in the State, if there is no city with a population of 50,000 or more; and

(3) Be sent to HCFA Regional Office upon publication.

Plainly, Section 447.205 was not complied with here, since the notice that was given, while it did appear in a state register similar to the *Federal Register* in accordance with subsection (d)(2), was not published at least sixty days before the proposed effective date of the change, as required by subsection (d)(1).

Defendant Blum argues that the termination of the Section 1634 agreement was not a "change in the Statewide method or level of reimbursement for a service" within the meaning of subsection (a) of Section 447.-205, meaning that this section has no applicability in the instant case. While the question is a close one, the Court, having carefully considered the language of Section 447.205 and the interpretations of that language previously rendered by the courts,

has determined that defendant Blum is incorrect in her argument.

The Court begins its analysis by observing that it is conceded by all that the public notice requirement contained in Section 447.205 is triggered by *some* proposed changes in a state Medicaid plan that are designed to decrease the cost of the state's participation in the Medicaid program. See 44 Fed.Reg. 45,964, 45,965 (1981) (arguing, in context of explanation for DHHS's proposal to revoke Section 447.205, that regulation has unnecessarily delayed implementation of "proposed reimbursement decreases"). Since the termination of the Section 1634 agreement was designed to effectuate precisely such a cost-saving result, the Court's task is really to determine which cost-saving proposals are covered by the regulation and which are not. In approaching this question, it is helpful to consider that the cost of a state's participation in the Medicaid program is largely a function of the number of persons who are eligible for Medicaid, the extent of the services that are offered to such persons, and the rate at which these services are valued for purposes of reimbursement. A state intent on increasing its Medicaid expenditures thus has three courses open to it: (1) it can (as the State of New York has done here) endeavor to reduce the number of persons eligible for Medicaid; (2) it can endeavor to reduce the extent of the services offered to persons eligible for Medicaid; or (3) it can endeavor to reduce the rate at which it will reimburse a health care provider for providing a Medicaid-covered service to a person eligible for that service.[14]

 As the Court reads Section 447.-205, its ambiguous phrasing is susceptible of being interpreted to cover a proposed change falling in any, some, or all of these three categories.[15] Since its enactment, the

---

**14.** An example might help make this distinction clear. Assume that a person who has transferred assets to become eligible for Medicaid is admitted to a hospital for three weeks, during which time he receives a number of Medicaid-covered services, at a total expense to a state, under the then-prevailing Medicaid reimbursement rates, of $10,000. The state, if it desires to limit or eliminate its future exposure to expenses such as this, has three alternatives open to it: (1) it can try to eliminate the eligibility of such persons for Medicaid, for example, by enacting a transfer-of-assets provision similar to the one at issue in this case; (2) it can try to limit the extent to which the services that such persons would likely receive qualify for Medicaid coverage, for example, by reducing inpatient hospital coverage to fourteen days per year, see, e.g., *Dunn v..Ginsberg, supra* note 10; or (3) it can try to reduce the amount that it is required to pay to the hospital as reimbursement for having provided the services that such persons would likely receive, for example, by determining that inpatient hospital care shall henceforth be valued at a smaller daily amount than previously, see, e.g., *Massachusetts Hospital Association, Inc. v. Harris,* 500 F.Supp. 1270 (D.Mass.1980), or by requiring that a portion of the cost of certain of the services that such persons would likely receive be paid by the person receiving it, see, e.g., *Becker v. Toia, supra.*

**15.** The Court rejects defendant Blum's vigorous argument that Section 447.205 is not capable of being read to encompass proposed changes, such as the one at issue here, falling in the first category. In the Court's view, a proposed change in the Medicaid eligibility rules is perfectly capable of being understood as a "proposed change in the Statewide ... level of reimbursement for a service." Under the Medicaid program, health care providers are reimbursed by the states for the costs of medical care furnished by such providers to persons eligible for Medicaid. The states, in turn, recoup a portion of such reimbursement from the federal government. Plainly, the total amount that a state pays out to Medicaid providers as "reimbursement" is a function of the number of state residents who are eligible for Medicaid. It follows that a change in the substantive Medicaid eligibility requirements will change the *level* of state reimbursement of Medicaid providers for "a service," indeed, for all services, rendered by Medicaid providers. Here then, since the purpose of terminating the Section 1634 agreement was to permit the State of New York to exercise the Section 209(b) option and thereby to deny Medicaid eligibility to a number of Medicaid recipients by enforcing the transfer-of-assets provision contained in N.Y. Soc.Serv.Law § 366.1(e), this termination can be understood as an effort to change the *level* of the State of New York's reimbursement of Medicaid providers for each service rendered by Medicaid providers under the Medicaid program. Simply stated, the proposed decrease in the number of persons eligible for Medicaid is intended to reduce the amount that the State of New York is required to pay health care providers as reimbursement under the Medicaid program. In the Court's view, the ambiguous

courts have generally taken a broad interpretive approach to Section 447.205. Thus, courts have found Section 447.205 applicable where the proposed change fell in the first category (the one at issue here), see, e.g., *Clark v. Gibbs, supra* note 10, slip op. at 7–8; *Dunn v. Ginsberg, supra* note 10, [1981–1] Medicare & Medicaid Guide (CCH) at 9465 (Section 447.205 triggered in both cases by state proposal to eliminate Medicaid eligibility of the "medically needy," see note 1 supra), and in the second category, see, e.g., *Jennings v. Alexander,* 518 F.Supp. 877, 888–90 (M.D.Tenn.1981) (Section 447.-205 triggered by proposed reduction in inpatient hospital benefits); *Seniors United for Action v. Ray, supra* note 12, slip op. at 9–10 (proposed elimination of a Medicaid service triggers Section 447.205), and in the third category, see, e.g., *Claus v. Smith,* 519 F.Supp. 829, 833–34 (N.D.Ind.1981) (Section 447.205 triggered by proposed "co-payment

provisions" where Medicaid recipients would be required to pay first $0.50 for medical services costing $10.00 or less); *Seniors United for Action v. Ray, supra* note 12, slip op. at 9–10 (Section 447.205 triggered by proposed co-payment provision). This broad approach accords with a general policy that, where a state has proposed a change designed to diminish its cost of participating in the Medicaid program, such a change is one that will usually increase the cost of medical care to persons eligible for Medicaid and thus is one on which Medicaid recipients should have an opportunity to be heard before it is put into effect.[16] In the Court's view, this policy is fully implicated by the facts of the instant case; as a result, the Court concludes that the public notice required by Section 447.-205 was a necessary predicate to defendant Blum's termination of the Section 1634 agreement.[17]

language at issue here is perfectly capable of being read to encompass such a proposed change.

16. The Court notes that Section 447.205 is the only provision in the federal Medicaid regulations that even arguably responds to this policy consideration. In particular, this concern is not met by the notice provisions contained in 42 C.F.R. pt. 431, subpt. E ("Subpart E"). Under the prevailing interpretation of Subpart E, an across-the-board change in a state's Medicaid program, such as is involved here, may only be applied against a particular individual Medicaid recipient upon ten-days written notice to the Medicaid recipient. *See, e.g., Budnicki v. Beal, supra* note 12, 450 F.Supp. at 551; *Becker v. Toia, supra,* 439 F.Supp. at 330–31; *Turner v. Walsh,* 435 F.Supp. 707, 713 (W.D.Mo.1977), aff'd, 574 F.2d 456 (8th Cir. 1978). Section 447.205, if interpreted as the Court construes it here, is not duplicative of the notice provisions contained in Subpart E. On the contrary, the two schemes are entirely distinct and perfectly complementary. Section 447.205 assures that Medicaid recipients will have advance notice of significant proposed changes in a state's Medicaid program, so that Medicaid recipients can be heard on the wisdom of the proposed changes before they are implemented. Subpart E comes into play in the event the proposed changes do become effective and are sought to be applied against individual recipients. The provisions of Subpart E guarantee that each Medicaid recipient will have advance notice that a significant, recently-implemented change in a state's Medicaid program is about to be applied against him or her; this gives the Med-

icaid recipient an opportunity to argue that the change does not apply to him or her *individually.* In other words, Section 447.205 exists to allow Medicaid recipients to contest the propriety of program changes before they are enacted, whereas Subpart E exists to allow Medicaid recipients to contest the case-by-case applicability of program changes once they have been enacted.

17. The Court recognizes that counsel for DHHS has filed a memorandum with the Court that endorses a different interpretation of Section 447.205 from that adopted herein. *See* Federal Defendant's Memorandum of Law in Response to Plaintiff's [sic] Motion for Partial Summary Judgment Against Defendant Blum, Dec. 4, 1980, at 7–9. In this brief, counsel for DHHS take the position that the notice requirement set forth in Section 447.205 is not triggered by a state's termination of its Section 1634 agreement. The Court is, of course, well aware of the principle that an agency's interpretation of its own regulation should be accorded great deference by a reviewing court. *Ballard v. Rockville Centre Housing Authority,* 605 F.2d 1283, 1286 (2d Cir. 1979); *National Wildlife Federation v. Benn,* 491 F.Supp. 1234, 1244–45 (S.D.N.Y.1980). When faced with such an interpretation, a court may ignore it only if it is plainly erroneous. *United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977); *International Fidelity Insurance Co. v. Crosland,* 516 F.Supp. 1249, 1251 (S.D.N.Y.1981). One court in another Circuit has, on the basis of an *ad hoc* DHHS submis-

Defendant Blum next contends that Section 447.205 is intended only to protect Medicaid providers, and thus that only Medicaid providers, and not Medicaid recipients such as plaintiffs herein, have standing to complain of a failure to comply with Section 447.205. While this interpretation is not entirely unpersuasive, owing to the fact that the section in question is located in 42 C.F.R. pt. 447, entitled "Payments for Services," the Court has determined that Section 447.205 should not be read so narrowly. The Court's conclusion is bolstered by the fact that the regulation itself speaks of "public notice," not notice to health care providers, and provides methods of dissemination that are calculated to insure that notice issued under Section 447.-205 is received by the public at large, not just health care providers.[18] DHHS has commented that the purpose of Section 447.205 "is to allow the public to evaluate [changes in the statewide method or level of reimbursement for Medicaid services] prior to their being made." 44 Fed.Reg. 20,693-94 (1979). This indicates that DHHS intended for the public at large, including Medicaid recipients, to benefit from Section 447.205. On this basis, the Court joins the line of decisions that has consistently permitted Medicaid recipients to object to a failure to comply with Section 447.205. *See Jennings v. Alexander, supra,* 518 F.Supp. at 888-90; *Seniors United for Action v. Ray, supra* note 12, slip op. at 9-10; *Dunn v. Ginsberg, supra* note 10, [1981-1] Medicare & Medicaid Guide (CCH) at 9465; *Philadelphia Welfare Rights Organization v. O'Bannon,* [1979-2] Medicare & Medicaid Guide (CCH) ¶ 30,058, at 9527-28 (E.D.Pa. Oct. 15, 1979).

To summarize, the Court holds the following with respect to the federal public notice requirements: (1) defendant Blum was required to comply with Section 447.-205 in connection with the termination of the Section 1634 agreement; (2) defendant Blum failed to comply with Section 447.205 in connection with the termination of the Section 1634 agreement; and (3) the named plaintiffs herein, since they all either were Medicaid recipients at the time the Section 1634 agreement was terminated or have such persons as members, have standing to complain of defendant Blum's failure to comply with Section 447.205. As a result, the Court holds that defendant Blum, by

sion similar in nature to that proffered here, held that the rules of deference set forth above required it to accept DHHS's position that Section 447.205 does not apply to proposed changes in Medicaid coverage. *Philadelphia Welfare Rights Organization v. O'Bannon,* 517 F.Supp. 501, 507 (E.D.Pa.1981). However, the Court of Appeals for this Circuit has held that, where an agency files an *amicus curiae* brief setting forth its opinion as to the proper reading of one of its regulations, such an expression of opinion is not an "interpretation" within the meaning of the above-cited rules. *Ames v. Merrill Lynch, Pierce, Fenner & Smith,* 567 F.2d 1174, 1177 n.3 (2d Cir. 1977). As a result, while it does not regard DHHS's position regarding Section 447.205 to be plainly erroneous, this Court is not permitted to rely on DHHS's memorandum in similar fashion to the *O'Bannon* court. DHHS's memorandum carries weight here only to the extent it is persuasive in its own right.

The Court finds DHHS's brief singularly unpersuasive. The brief makes no effort to support DHHS's reading of Section 447.205 other than to suggest that an agency's interpretation of its own regulation is binding on a court, and to point out that the Section 1634 agreement contained its own notice provision. The Court has already dealt with the first point. Turning to the second point, the Court does not see how the fact that the Section 1634 agreement can be terminated only on 120-days notice to DHHS in any way supports a conclusion that Section 447.205 does not apply here. Surely DHHS does not mean to suggest that the notice to DHHS, which in this case was contained in a private letter from defendant Blum to Patricia Harris, then Secretary of DHHS, is an adequate substitute for the "public notice" envisioned by Section 447.205.

18. For example, notices published pursuant to Section 447.205 must "[i]dentify a local agency in each county (such as the social services agency or the health department) where copies of the proposed changes are available for public review," 42 C.F.R. § 447.205(c)(4); further, they must "[g]ive an address where written comments may be sent and reviewed by the public." *Id.* § 447.205(c)(5). Also, the media in which a Section 447.205 notice must be published are plainly calculated to insure that the information contained in the notice is widely disseminated among the general public. *See id.* § 447.205(d).

failing to publish advance notice of the termination in accordance with Section 447.205, acted unlawfully in terminating the Section 1634 agreement.[19]

### Plaintiffs' Motion for Class Certification

■ Plaintiffs move for an order, pursuant to Rule 23(c), Fed.R.Civ.P., certifying this action as a class action. The class that plaintiffs seek to have certified would include (1) individuals who applied for SSI on or before August 29, 1980, and were either in receipt of SSI as of that date or were accepted for SSI thereafter, and (2) SSI recipients who applied for SSI after August 29, 1980. Since the Court has not yet determined whether the named plaintiffs have standing to present their claim that the State of New York's amended Medicaid plan is unlawful insofar as it prohibits Medicaid applicants and recipients from transferring assets in order to become financially eligible for Medicaid, it is plainly premature for the Court to rule whether class certification is appropriate with respect to this claim; the Court leaves this question, as it left the standing question, for another decision. Here, the Court focuses solely on whether class certification is appropriate with respect to the claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement.

■ The Court held *supra* that the named plaintiffs, since they all either were

---

**19.** As noted, plaintiffs also argue that defendant Blum failed to satisfy applicable state public notice requirements in connection with the termination of the Section 1634 agreement. The state notice provision at issue reads as follows in relevant part:

> [An] agency shall, within the time specified by any statute or, except if no time is specified then at least thirty days prior to the adoption, amendment, suspension or repeal of a rule, (1) publish or cause to be published, notice of its proposed action in the state register and in such other manner as may be required by statute....

N.Y.State Ad.Proc.Law § 202.2(a). The parties agree that the termination of the Section 1634 agreement involved "adoption, amendment, suspension or repeal" of a "rule" within the meaning of this provision, and that defendant Blum was required to publish a notice of the termination and of the rule changes necessitated thereby in the *New York State Register* at least thirty days before this "adoption, amendment, suspension or repeal" occurred. Defendant Blum observes that such a notice was published on July 23, 1980, and contends that this publication satisfied N.Y.State Ad.Proc.Law § 202.2(a) because the termination of the Section 1634 agreement did not become effective until September 2, 1980, more than thirty days later. Plaintiffs argue that the termination of the Section 1634 agreement was "adopted" within the meaning of this provision on April 30, 1980, the date that defendant Blum notified DHHS of the State of New York's intention to terminate the Section 1634 agreement. New York's State Administrative Procedure Act contemplates a three-step rule-making procedure with respect to a rule, such as the one at issue here, as to which there is no statutory requirement of a prior hearing. First, a rule is *proposed* to be *adopted*. (For the sake of convenience and for ease of comprehension, the Court henceforth uses the term "adopted" as shorthand for the statutory language "adoption, amendment, suspension or repeal.") Second, a rule is *adopted*. Rules are *adopted* by being filed with the Secretary of State of the State of New York. N.Y.Ad.Proc.Law § 202.3. However, a rule may not be *adopted* unless notice that the rule had been *proposed* was published in the *New York State Register* at least thirty days prior to the date of adoption, that is, the date of filing with the Secretary of State. *Id.* § 202.2(a). Third, a rule becomes *effective*. Rules can become *effective* only if they have been *adopted*, that is, filed with the Secretary of State. *Id.* § 203. However, rules become *effective* on the day they are *adopted* unless a later effective date is required by statute or is specified either in the rule itself or in the "notice of action taken" that must be submitted to the Secretary of State when the rule is filed. *Id.* §§ 202.3(4), 203.

Given this structure, it is apparent that the question whether defendant Blum complied with N.Y.Ad.Proc.Law § 202.2(a) depends on when the "rule" at issue here, namely, the termination of the Section 1634 agreement and the rule changes necessitated thereby, was filed with the Secretary of State of the State of New York. Nowhere in the voluminous papers submitted to the Court in connection with this case does this fact appear. However, the Court has, by its own research, ascertained that the regulations in question were filed with the Secretary of State on September 2, 1980. Under the principles set forth above, then, these regulations were *adopted* on September 2, 1980, which was more than thirty days after these regulations were *proposed* by publication in the *New York State Register*. As a result, plaintiffs' argument that defendant Blum failed to comply with applicable *state* public notice requirements has no merit.

eligible for Medicaid as of August 29, 1980, or have such persons as members, have standing to claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. Defendant Blum concedes that, given this holding, class certification is appropriate with respect to this claim. However, she contends that the class certified should not include the second of the two subclasses that plaintiffs seek to represent, namely, SSI recipients who applied for SSI after August 29, 1980.

The Court disagrees. Defendant Blum's argument that the class should not include SSI recipients who applied for SSI after August 29, 1980, is based almost entirely on her contention that such SSI recipients have no standing to complain that defendant Blum acted unlawfully in terminating the Section 1634 agreement.[20] Basically, defendant Blum argues that plaintiffs' putative class does not have "questions of law or fact [in] common," as required by Rule 23(a)(2), Fed.R.Civ.P., because SSI recipients who applied for SSI after August 29, 1980, are unable, due to their lack of standing, to raise the claim that the Section 1634 agreement was unlawfully terminated. The Court rejects this argument. SSI recipients who applied for SSI after August 29, 1980, would have been automatically eligible for Medicaid had the SSI agreement not been terminated. Moreover, the Section 1634 agreement might not have been terminated had defendant Blum consulted with the MAC regarding the termination and provided public notice of the termination as she was legally required to do. In the Court's view, then, SSI recipients who applied for SSI after August 29, 1980, suffered a direct injury as a result of defend-

ant Blum's unlawful conduct and are within the class intended to be protected by the consultation and public notice requirements that defendant Blum violated in this case. Thus, under the principles discussed *supra* in connection with defendant Blum's motion to dismiss, SSI recipients who applied for SSI after August 29, 1980, have standing to challenge the lawfulness of the termination of the Section 1634 agreement under either of the two theories relied upon here. They are, accordingly, properly included in the class on behalf of which this action is maintained.

For the above reasons, the Court grants plaintiffs' motion for an order certifying this action as a class action insofar as plaintiffs seek class certification with respect to their claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. The class certified will include both SSI recipients who applied for SSI on or before August 29, 1980, and SSI recipients who applied for SSI after that date. Plaintiffs' motion for an order certifying this action as a class action is denied without prejudice insofar as it seeks class certification with respect to other of plaintiffs' claims.

### *Relief*

As explained *supra*, the Court has concluded that defendant Blum acted unlawfully in terminating the Section 1634 agreement, first because she failed to consult with a properly constituted medical care advisory committee prior to the termination, as required by 42 C.F.R. § 431.12, and second because she failed to publish notice of the termination in the *New York State*

---

**20.** Defendant Blum also argues that none of the named plaintiffs is or represents an SSI recipient who applied for SSI after August 29, 1980, meaning that the named plaintiffs in this action cannot "adequately represent" such SSI recipients, as required by Rule 23(a)(4), Fed.R.Civ.P. First, the membership of the Gray Panthers, a named plaintiff herein, includes SSI recipients who applied for SSI after August 29, 1980. Defendant Blum's argument is thus factually incorrect. Second, while it is true that none of the *individual* named plaintiffs applied for SSI after August 29, 1980, the record does not dis-

close any divergence between the interests of the individual named plaintiffs and the interests of SSI recipients who applied for SSI after August 29, 1980. Moreover, it is beyond doubt that the named plaintiffs are represented by competent counsel experienced in this sort of litigation. Under these circumstances, there can be no argument that the interests of SSI recipients who applied for SSI after August 29, 1980, will not be adequately protected in the fashion contemplated by Rule 23(a)(4). *See Tunin v. Ward*, 78 F.R.D. 59, 66 (S.D.N.Y.1977).

*Register* at least sixty days before the termination became effective, as required by 42 C.F.R. § 447.205. This brings the Court to the most difficult issue that it must resolve by today's decision, namely, the question of the relief that is to be decreed in plaintiffs' favor on account of defendant Blum's unlawful conduct.

■ The Court begins its analysis of this complicated question by observing that it is sitting as a court of equity, meaning that the appropriate relief must be fashioned in light of all the facts and circumstances of the case before it. Specifically, a court sitting in equity must fashion its relief with a view toward addressing and correcting the unlawful conduct that was committed, yet avoiding a decree that is overbroad in its application. Moreover, in deciding upon the appropriate relief, the court must balance the nature and extent of the wrong that occurred against the impact of and hardship that would be imposed by any remedial order.

■ The Court, with the principles just recited in mind, has given a great deal of thought to the relief that should be decreed in this case, and to this end has considered a number of factors that bear on the question. Of foremost importance to the Court is the fact that, for the reasons discussed at length *supra*, defendant Blum had no right to terminate the Section 1634 agreement on August 29, 1980. She thus had, and has, no right to subject SSI recipients who had applied for SSI as of that date to the Medicaid recertification process that was instituted subsequent to the termination of the Section 1634 agreement, no right to adopt Medicaid eligibility criteria for such persons different from those that pertained to those persons under the Section 1634 agreement, and no right to declare such persons ineligible for Medicaid either because they did not qualify under the new eligibility criteria or did not complete the recertification process. Similarly, defendant Blum had no right to deny Medicaid eligibility to any SSI recipient who applied for SSI after August 29, 1980, and subsequently applied for Medicaid. To the extent that she did these things, defendant Blum acted unlawfully.

The Court also is cognizant of the fact that the Commissioner of the New York State Department of Social Services has a remarkably poor record of compliance with the consultation and public notice requirements that it violated in this case. My brethren on this Court have repeatedly instructed the Commissioner on the importance of consulting with the MAC in cases where such consultation is required and of observing notice requirements similar to those that were ignored here. *See, e.g., Hospital Association of New York State, Inc. v. Toia, supra*, 473 F.Supp. at 940; *Becker v. Toia, supra*, 439 F.Supp. at 329–33; *Hospital Association of New York State, Inc. v. Toia, supra*, 438 F.Supp. at 875. Yet the Commissioner has, in this case, once again flouted these requirements.

In endeavoring to determine the appropriate relief in this case, the Court has also considered the fact that, at least insofar as plaintiffs' instant partial summary judgment motion is concerned, plaintiffs are not directly challenging the substance of what defendant Blum did, but rather the manner in which she went about doing it. It is conceded by all that defendant Blum had the *power* to terminate the Section 1634 agreement; plaintiffs' argument is that two necessary predicates to defendant Blum's *exercise* of that power were not fulfilled. Thus, while DHHS stands ready to enter into a new Section 1634 agreement with the State of New York, it would be most unwise for the Court to order that such a drastic and administratively burdensome remedial step be taken. The question whether the State of New York should or should not be party to a Section 1634 agreement is one ultimately within the discretion of defendant Blum to decide. The consultation and public notice requirements at issue here exist to assure that actions such as the termination of the Section 1634 agreement are decided upon only after all relevant points of view have been considered. Defendant Blum is perfectly capable of giving these points of view proper consideration notwithstanding the fact that the State of

New York is not party to a Section 1634 agreement at the time she is making her decision.

The Court is cognizant of the fact that other courts have consistently dealt with unlawful conduct such as occurred here by maintaining or restoring the *status quo ante* until such time as the medical care advisory committee is properly consulted or the requisite public notice is properly given. *See, e.g., Budnicki v. Beal, supra* note 12, 450 F.Supp. at 557–58. Here, in the Court's view, the *status quo ante* cannot be perfectly restored. The MAC can never be given the input that it should have had with respect to the decision to terminate the Section 1634 agreement, because defendant Blum has reached and implemented that decision, and the Court cannot in equity undo it. The public can never be given proper notice of the termination of the Section 1634 agreement, because that agreement has already been terminated without sufficient notice.

At the same time, the fact that the *status quo ante* cannot be perfectly restored here does not mean that there can be no remedy for defendant Blum's wrong. The Court has little patience with defendant Blum's arguments that efforts to approximate the *status quo ante* should not be made because the administrative difficulties that would inhere in making such efforts outweigh the benefits that plaintiffs would be afforded by such a remedy. In the Court's view, defendant Blum, who previously successfully opposed a preliminary injunction in this case by arguing to this Court that no irreparable harm would result if such an injunction did not issue, cannot in equity be permitted to avoid final injunctive relief by arguing that the harm to plaintiffs has already occurred and is now too costly to cure. The Court notes that it has declined to order the most costly remedy, namely, entry into a new Section 1634 agreement.

If certain administrative costs are incurred as a result of the relief decreed on the basis of today's decision, these are costs that must be incurred to give effect to the federal regulations that the Commissioner of the New York State Department of Social Services has once again flouted, and costs that the Commissioner has brought on herself by resisting the entry of a preliminary injunction in this case.

On the basis of all the foregoing considerations, the Court has determined that an order should be entered containing the following provisions:

(1) SSI recipients who applied for SSI on or before August 29, 1980, and who, pursuant to the recertification process begun on September 2, 1980, have subsequently been denied Medicaid eligibility either because they did not satisfy the new eligibility criteria imposed as a consequence of the termination of the Section 1634 agreement or because they did not complete the recertification process, shall be restored to Medicaid eligibility.[21]

(2) SSI recipients who applied for SSI after August 29, 1980, and who were denied Medicaid eligibility upon applying for Medicaid, shall be granted Medicaid eligibility as of the date of their application for SSI.

(3) SSI recipients who applied for SSI after August 29, 1980, and who were granted Medicaid eligibility upon subsequently applying for Medicaid, shall be deemed to have applied for Medicaid on the day they applied for SSI.

(4) SSI recipients who applied for SSI after August 29, 1980, but who have not subsequently applied for Medicaid, should be notified that they are now eligible for Medicaid if they apply, and (to the extent they then apply) shall be deemed to have applied for Medicaid on the day they applied for SSI.[22]

21. Defendant Blum has, pursuant to injunctions issued in certain litigations related to this one, been treating SSI recipients who applied for SSI before August 29, 1980, as if the Section 1634 agreement were still in effect. The Court thus need not determine whether the restoration discussed in point (1) above should, or could, be made retroactive to August 29, 1980.

22. The Court is aware of the disagreement between defendant Blum and DHHS as to the federal government's legal duty or legal ability

(5) The recertification process begun on September 2, 1980, shall be discontinued.[23]

(6) Defendant Blum shall reconsider the decision to terminate the Section 1634 agreement. To this end, defendant Blum shall consult with the MAC, which is apparently now properly constituted,[24] regarding whether or not the State of New York should operate its Medicaid program under a Section 1634 agreement.[25]

to reimburse defendant Blum for funds expended to carry out points (2), (3), and (4) above. Since this issue has been raised only obliquely in the papers before the Court, the Court does not propose to resolve it by today's decision; the Court presently takes no position on the merits of this issue and expresses no view as to whether this issue is properly considered part of the instant litigation. At this point, the Court merely observes that defendant Blum's duty to afford the relief contemplated in points (2), (3), and (4) above is in no way affected by whether the federal government is either willing or able to expend federal funds to assist defendant Blum in affording such relief.

The Court also notes that defendant Blum has not, in her submissions to the Court on the relief issue, relied on the eleventh amendment as a bar to the relief contemplated in points (2), (3), and (4). Such reliance would have, in the Court's view, been unconscionable in light of defendant Blum's successful resistance of a preliminary injunction in this case. The Court is aware that a state does not necessarily waive its eleventh amendment immunity merely by failing to raise it before the trial court, *see Edelman v. Jordan, supra* note 8, 415 U.S. 677–78, 94 S.Ct. 1362–63, and accordingly does not purport to hold that defendant Blum has waived her eleventh amendment immunity here. However, since it would be, given the facts of this case, outrageous for defendant Blum to rely on the eleventh amendment, the Court believes that it should interpret defendant Blum's failure to raise the eleventh amendment as an indication that she does not wish to do so. The Court accordingly expresses no opinion as to whether, in light of the fact that the instant action was commenced *before* any members of the plaintiff class lost Medicaid eligibility as a result of defendant Blum's unlawful conduct, the relief to be decreed as a result of today's decision is in any sense "retroactive" within the meaning of *Edelman v. Jordan.* Nor need the Court decide whether principles of equitable estoppel, as distinct from principles of waiver, prevent defendant Blum from relying on the eleventh amendment here.

**23.** The Court notes that the order should, of course, be drafted so as to avoid conflict with the federal requirement that the Medicaid eligibility of all Medicaid recipients must be redetermined on at least an annual basis. *See* 42 C.F.R. § 435.916.

**24.** Defendant Blum has represented to the Court, and plaintiffs do not contest her assertion, that the MAC now includes, and has in-

cluded since October 1980, Medicaid recipients among its membership. Plaintiffs contend that the MAC remains improperly constituted because less than 51% of the membership of the MAC is made up of Medicaid recipients and representatives of consumer interests. The argument that medical care advisory committees must be composed in this fashion is based on the DHHS guidelines for state administration of Medicaid programs, wherein the Medical Services Administration of DHHS "*urges* that in all [Medicaid] programs at least 51 percent of the membership of State Medical Care Advisory Committees be consumers and consumer representative, including [Medicaid] recipients." *Medical Assistance Manual, supra,* at 4 (emphasis added). On its face, this language seems intended to be hortatory, not mandatory. Given that the regulations issued by DHHS with respect to the composition of medical care advisory committees state only that such committees "must include" members of consumers' groups, and provides no minimum membership percentage with respect to such persons, *see* 42 C.F.R. § 431.12(d)(2), the Court is constrained to conclude that the language in the *Medical Assistance Manual* is indeed merely hortatory, and not an interpretation of the regulations. The requirements of the law are satisfied with respect to consumer group representation as long as a medical care advisory committee contains more than one Medicaid recipient and more than one member of a consumer organization among its membership. *Accord, Philadelphia Welfare Rights Organization v. O'Bannon, supra* note 17, 517 F.Supp. at 510. *Contra, Dominguez v. Milliken, supra,* [1973] Medicare & Medicaid Guide (CCH) at 9123 (imposing 45% consumer group membership requirement).

**25.** If defendant Blum has consulted with the MAC regarding whether or not the State of New York should operate its Medicaid program under a Section 1634 agreement during the time the motions decided herein were *sub judice,* she need not do so again. The Court notes that none of the consultations that defendant Blum had with the MAC prior to May 1, 1981, the day when submissions on these motions were completed, were consultations of the type that the Court holds must occur here. None of these consultations occurred in the context of a reconsideration of the decision to terminate the Section 1634 agreement; nor did any of these consultations seek the MAC's input as to whether the State of New York should or should not operate its Medicaid program under

(7) Defendant Blum shall publish notice of her reconsideration of the decision to terminate the Section 1634 agreement in the *New York State Register.* The reconsideration period shall extend at least sixty days after such publication. Thereafter, if defendant Blum determines not to enter into a new Section 1634 agreement with DHHS, the enjoined recertification process may be recommenced.

## CONCLUSION

Defendant Blum's motion to dismiss the complaint filed in this action pursuant to Rule 12(b)(1), Fed.R.Civ.P., or Rule 12(b)(6), Fed.R.Civ.P., is denied. Defendant Krauskopf's motion to dismiss the complaint as to him pursuant to Rule 21, Fed.R.Civ.P., or Rule 12(b)(6), Fed.R.Civ.P., is granted. Plaintiffs shall have leave to serve and file an amended complaint as to defendant Krauskopf within thirty (30) days of the date of this decision. Plaintiffs' motion for partial summary judgment pursuant to Rule 56(a), Fed.R.Civ.P., is granted. Defendant Blum's motion for partial summary judgment pursuant to Rule 56(b), Fed.R. Civ.P., is denied. Summary judgment is awarded in plaintiffs' favor against defendant Blum on their claim that defendant Blum acted unlawfully in terminating the Section 1634 agreement. Plaintiffs' motion for certification of this action as a class action pursuant to Rule 23(c), Fed.R.Civ.P., is granted in part and denied in part. The class certified includes all SSI recipients who are New York residents, regardless of whether they applied for SSI on or before August 29, 1980.

The remaining question that must be considered is the course to be followed with respect to the other segment of this litigation, namely, plaintiffs' claim that N.Y.Soc. Serv.Law § 366.1(e), insofar as it denies Medicaid eligibility to persons who transfer assets in order to qualify for Medicaid, is invalid and unenforceable. Many of the

issues raised by this claim are dealt with in Judge Munson's decision in *Caldwell v. Blum,* [1981–1] Medicare & Medicaid Guide (CCH) ¶ 30,774 (N.D.N.Y. Nov. 4, 1980), *aff'd mem.,* No. 80–9062 (2d Cir. June 2, 1981). It may well be that the Court of Appeals' recent affirmance of Judge Munson's decision will enable the parties to resolve their remaining differences. Accordingly, the parties shall notify the Court within thirty (30) days of the date of this decision how they propose to proceed with the litigation of this case.

Settle order on notice.

---

a Section 1634 agreement. The Court further notes that, even if defendant Blum has, at some time after May 1, 1981, consulted with the MAC in this fashion, the fact that she would thereby be excused from doing so again does

not mean that she would be excused from reconsidering the decision to terminate the Section 1634 agreement or from complying with any other aspects of the order that is to be issued as a result of her unlawful conduct.