Idabelle BENTON et al. and William Wisebaker et al., Plaintiffs-Appellees,

v.

James A. RHODES, Governor, State of Ohio, and Raymond McKenna, Director, Ohio Department of Public Welfare, Defendants-Appellants.

No. 76–2177.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 14, 1977.

Decided Aug. 10, 1978.

Keith, Circuit Judge, concurred in judgment and filed opinion.

William J. Brown, Atty. Gen. of Ohio, Richard J. Nagle, Jr., James F. Porcello, Jr., Columbus, Ohio, for defendants-appellants.

Jerry Weiner, Columbus, Ohio, for Idabelle Benton.

Kathryn Haller, Ohio Legal Rights Service, Columbus, Ohio, for William Wisebaker.

Carolyn C. McTighe, Edward R. Stege, Jr., Franklin Hickman, Peter Iskin, Lloyd B. Snyder, Cleveland, Ohio, for plaintiffs-appellees.

Before WEICK and KEITH, Circuit Judges, and CECIL, Senior Circuit Judge.

WEICK, Circuit Judge.

The suits in the District Court were brought by plaintiffs under 28 U.S.C. § 1343(3), as class actions of all Ohio Medicaid recipients, against James A. Rhodes, the Governor of Ohio, and Raymond McKenna, the Director of the Ohio Department of Public Welfare, to enjoin the proposed reduction of a number of optional benefits from the state's medicaid program, and seeking declaratory relief.

The defendants have appealed from an order of the District Court entered on May 11, 1975, which still remains in effect, and which granted plaintiffs' motion for a preliminary injunction, restraining defendants from reducing the optional benefits, on the alleged grounds that the notice of reduction was defective and was not in compliance with the applicable federal regulations, and that no hearing was afforded to the medicaid recipients on such reduction in services.

We disagree and reverse. We are of the opinion that the notice of termination sufficiently complied with the regulations and that the applicable regulations required no hearing on the state's reduction of optional benefits.

## I

The finding of the District Court with respect to the form and contents of the notice, is as follows:

On or about April 1, 1976, the Ohio Department of Public Welfare included in its monthly mailing to medicaid recipients an enclosure approximately the size of a computer card, styled "Reduction in Medical Benefits." The front of the card contained the following language:

State law requires that the Department not spend more money than it has been given by the State Legislature for medical benefits. The amount of money provided by the State Legislature is not sufficient for the rest of the budget period ending 6–30–77. It is with deep regret that I must announce that the medical benefits listed on the reverse of this card will no longer be available beginning May 1, 1976. If you have any questions regarding your eligibility for any specific medical service, contact your county welfare department or medical provider.

The reverse side of the card read as follows:

The following optional benefits (other than physician services) are no longer covered by the Medicaid program effective May 1, 1976.

- Drugs that can be bought without a Doctor's prescription such as aspirin (except for insulin which remains a covered item), and therapeutic tranquilizers such as Darvon, Librium and Valium.
- Medical supplies except for a few life sustaining items. See CWD or medical providers for list.
- Ambulance except for emergency transportation to hospital.
- Dental Services
- Optometrist
- Podiatrist
- Psychologist
- Chiropractor
- Physical Therapy
- Speech Therapy
- Occupational Therapy
- Private Duty Nursing
- Mechanotherapy
- Cosmetherapy

The pertinent provision of the Medicaid regulations, 45 C.F.R. § 205.10, reads as follows:

§ 205.10 Hearings.

(a) State plan requirements. A State plan . . . shall provide for a system of hearings under which:

.    .    .    .    .

(5) An opportunity for a hearing shall be granted . . . to any recipient who is aggrieved by any agency action resulting in suspension, reduction, discontinuance or termination of assistance. *A hearing need not be granted* when either State or Federal law require automatic grant adjustments for classes of recipients unless the reason for an individual appeal is incorrect grant computation. [Emphasis added.]

When the regulation was introduced in final form, 38 Fed.Reg. 22006 (Aug. 15, 1973), the Secretary of Health, Education and Welfare explained the revision of the regulation as follows:

5. *Grievance procedures in lieu of hearings on questions of law or policy.* Section 205.10(a)(5). Most of the comments in this area argued against this provision on the basis that the hearing procedure provides a viable mechanism for effecting changes in policy. Many legal aid groups pointed out that a recent court case [*Yee-Litt v. Richardson,* 353 F.Supp. 996 (N.D.Cal.) (three-Judge Court), aff'd, 412 U.S. 924, 93 S.Ct. 2753, 37 L.Ed.2d 152 (1973)] cast doubt on the viability of distinguishing between fact or judgment and policy or law. Those in favor stressed reduction of administrative cost.

In response to these comments and the court case, the regulations have been modified. The States *may* provide for group hearings on questions of policy or law. They need not provide a hearing where either State or Federal law requires automatic grant adjustments for classes of recipients. On individual requests not resulting from such a change in State or Federal law, assistance must be continued pending a hearing decision unless the hearing officer determines at the hearing that the sole issue is one of State or Federal *law or policy* or a change in State or Federal law. *The provision*

*regarding a grievance system has been deleted since "expression of views" on program policy is part of legislative and rulemaking procedures.* [Emphasis added.]

The Secretary's comments indicate a plain intent to distinguish the right to a hearing to contest an agency action curtailing applied-for, currently-received benefits, on the basis of the specific facts of the recipient's case, from the proposed right to a hearing or other grievance procedure as a means of contesting issues of State or Federal law or policy, whether after or in advance of their implementation. Because, in the Secretary's view, expression of views on program policy is a normal part of legislative and rulemaking procedures, it was not thought necessary to require either hearings or an alternative grievance procedure to consider issues of law or policy.

Even when a hearing is requested on the facts of an individual case, in which case the recipient is entitled to the continuation of benefits until a hearing decision is rendered, 45 C.F.R. § 205.10(a)(6)(i)(A), benefits may be terminated before such decision if "the hearing officer determines at the hearing that the sole issue is one of State or Federal law or policy or a change in State or Federal law." *Id.;* 38 Fed.Reg. 22006 (Aug. 15, 1973).

█ In our opinion, when a state decides to terminate optional benefits on the basis of lack of appropriated funds, or for any other state reason, this is a matter of state law or policy which it was permitted to adopt. We find nothing in the Federal or State Constitutions giving prospective recipients of optional benefits a constitutional right to their perpetual continuance. Until the optional benefits were terminated all of the benefits could easily be obtained merely by the presentation of a medicaid card and the state agency had no way to control the amount applied for and received.

When agency regulations are validly promulgated pursuant to legislative authority they have the force and effect of law. We are of the opinion that there is no practicable means of distinguishing between agency policy and state law.

█ Thus, we hold that matters of law and policy are not subject to any hearing requirements under the applicable regulations, whether the hearing be pre- or post-reduction. Contrary to the decision of the District Court, the regulations do not "provide each medicaid recipient the right to a pre-reduction hearing where he is afforded an opportunity to show that the facts of his case are not caught by the proposed changes in state or federal law or policy."

We think the notice adequately advised the recipients of the reasons for the reduction of the optional services, namely, the lack of sufficient funds appropriated by the state legislature. It was small consolation to the defendant state officials to learn from the District Judge, who enjoined them, that their inability to make the payments ordered would be a defense to a contempt charge filed against them if they did not have the funds to make such payment.

It would appear that the agency was actually without funds, but the legislature subsequently made additional appropriations. In other words, all recipients have received payment for the optional services which the Court enjoined the agency from terminating.

We are further of the view that the Medical Assistance Advisory Committee was sufficiently apprised of the problems. It was not necessary for the state officials to obtain the consent of the Committee to the reduction of the optional benefits.

Constitutional issues were raised by the Complaints which might require the convening of a three-Judge Court to determine such issues. The District Court did not rule on any of these constitutional issues as the case was heard on a claim of pendent jurisdiction.

It does seem rather ridiculous that a person, who has not even filed a claim, could object to the reduction of optional benefits because of the possibility that he might want to have a corn removed from his toe,

or might want to go to a dentist to have his teeth cleaned.

We also note that the Governor of Ohio was made a party defendant. The reason for his being included as a defendant does not appear from the record, other than the fact that he appointed the Director of the Department of Public Welfare. If no relief is requested against the Governor, he should be dismissed.

We do not regard the case of *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), as apposite. *Goldberg* involved the termination of public welfare payments. The present case involves only the termination of optional benefits which the state was never required to provide in the first place. The *required* payments under medicaid are still being made.

In our opinion the preliminary injunction was improvidently granted. The injunction has now been in force for more than three years, and has resulted in the expenditure of state funds which the state had a lawful right to, and did, attempt to terminate on April 1, 1976.

The preliminary injunction is therefore vacated and the cause is remanded to the District Court.

KEITH, Circuit Judge, concurring in the judgment.

I concur in the majority's judgment which holds that the preliminary injunction issued in this case should be vacated for the reason that no hearing requirement exists when either state or federal law requires automatic grant adjustments. 45 C.F.R. § 205.10(a)(5); *see also Jennings v. Solomon*, Civ.No. Y–75–1869 and Y–76–210 (D.Md. Nov. 4, 1976).

I disagree with the majority's finding, however, that the notice of termination sufficiently complied with the regulations. Under Section 205.10(a)(4), the intended action of the Department of Public Welfare was an action "to discontinue, terminate, suspend or reduce assistance." This being so, Section 205.10(a)(4) goes on to provide the following:

(i) The State or local agency shall give timely and adequate notice, except as provided for in paragraphs (a)(4)(ii), (iii), or (iv) of this section. Under this requirement:

(A) "Timely" means that the notice is mailed at least 10 days before the date of action, that is, the date upon which the action would become effective;

(B) "Adequate" means a written notice that includes a statement of what action the agency intends to take, the reasons for the intended agency action, the specific regulations supporting such action, explanation of the individual's right to request an evidentiary hearing (if provided) and a State agency hearing, and the circumstances under which assistance is continued if a hearing is requested;

.    .    .    .    .

(iii) When changes in either State or Federal law require automatic grant adjustments for classes of recipients, timely notice of such grant adjustments shall be given which shall be "adequate" if it includes a statement of the intended action, the reasons for such intended action, a statement of the specific change in law requiring such action and a statement of the circumstances under which a hearing may be obtained and assistance continued.

There are thus four requirements which must be met in order to comply with the adequate notice provisions of the regulation: (1) a statement of the intended action, (2) the reasons for the intended action, (3) a statement of the change in law requiring the action, and (4) a statement setting forth the circumstances under which a hearing may be had and assistance continued. The majority opinion notes only that the notice adequately advised recipients of the reasons for the intended reductions. The notice, however, did not set forth the circumstances, if any, under which a hearing might be had or assistance continued and therefore did not comply with the notice provisions of the regulations. Nevertheless, this court having found that no hearing is required, a finding with which I concur, it would be

pointless to hold that benefits must be continued until adequate notice is given to recipients, which notice would only inform them that they have no present right to a hearing. *See Jennings v. Solomon, supra* at 15. For these reasons, I concur in the judgment of the court.