Lucinda TURNER, et al., Plaintiffs,

v.

Margaret M. HECKLER, Secretary of Health and Human Services, et al., Defendants.

No. C–3–83–207.

United States District Court,
S.D. Ohio, W.D.

Aug. 25, 1983.

Jeri Simmons, Dayton, Ohio, for plaintiffs.

Gerald F. Kaminski, Asst. U.S. Atty., Dayton, Ohio, Cory Crognale, Asst. Atty. Gen., Columbus, Ohio, David Smith, Asst. Pros. Atty., Springfield, Ohio, William H. Wolff, Asst. Pros. Atty., Dayton, Ohio, for defendants.

DECISION AND ENTRY SUSTAINING PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION; FEDERAL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OVERRULED IN PART AND NOT RULED UPON IN PART; FURTHER PROCEDURES SET ON SCOPE OF INJUNCTION TO BE ISSUED

WALTER H. RICE, District Judge.

This case came on to be heard, on April 8, 1983, on Plaintiffs' motion for a preliminary injunction, which seeks to enjoin the enforcement of certain federal and state regulations implementing aspects of the Medicaid program, established under Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.* In response, the federal Defendants in the case have moved to dismiss or for summary judgment in their favor (Doc. # 12), and the State Defendants have filed a memorandum (Doc. # 21) in opposition to the motion for a preliminary injunction.

For the reasons outlined below, Plaintiffs' motion is sustained, and Defendants' motion for summary judgment is overruled in part, and not ruled upon in part. Further procedures are established to determine the scope of the preliminary relief due the Plaintiffs.

Recently, the Supreme Court summarized the scope and purposes of the Medicaid program.

> The Medicaid program was established in 1965 in Title XIX of the Act "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae,* 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784. Section 1902(a)(10) of the Act, 42 U.S.C. § 1396a(a)(1), sets forth the basic scope of the program, which has not changed significantly from its enactment in 1965. See 79 Stat. 345. Participating States are required to provide Medicaid coverage to certain individuals—now described as the "categorically needy"; at their option States also may provide coverage (and receive partial federal reimbursement) to other individuals—described as the "medically needy." *See, Schweiker v. Gray Panthers,* 453 U.S. 34, 37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460. These classes are defined by reference to other federal assistance programs.

*Schweiker v. Hogan,* 457 U.S. 569, 571–72, 102 S.Ct. 2597, 2600–01, 73 L.Ed.2d 227 (1982) (footnote omitted). For purposes of this case, the "other federal assistance programs" are found in the Supplemental Security Income for the Aged, Blind, and Disabled (SSI) program, 42 U.S.C. § 1381 *et seq.,* established in 1972.

While the SSI program is funded only by the federal government, "the expansion of general welfare accomplished by the SSI program increased Medicaid obligations for some states." *Hogan, supra,* 457 U.S. at 581–82 n. 18, 102 S.Ct. at 2604–05 n. 18. To encourage States to remain in the Med-

icaid program despite the higher costs, Congress enacted 42 U.S.C. § 1396a(f) ("§ 209(b) option"), which enabled states to "elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972." *Id.* Ohio is a "§ 209(b)" state. Ohio Rev.Code Ann. § 5111.02 (Page 1982).

The state regulation under attack herein is found at Ohio Adm.Code § 5101:1–39–22, which became effective on June 1, 1982. That regulation (hereinafter referred to as the "new" or "Ohio" regulation) concerns the treatment of an institutionalized Medicaid recipient's income, and provides that a certain amount may be deducted from that income to support the needs of a noninstitutionalized spouse or child. Under the regulation, some $222.00 may be set aside each month for a noninstitutionalized spouse.[1] The federal regulation which governs the "maintenance needs" of a noninstitutionalized spouse is found at 42 C.F.R. § 435.733(b)–(c) (1982).

Plaintiffs are four married couples (each composed of an institutionalized husband receiving Medicaid payments and a noninstitutionalized wife). Defendants are Margaret M. Heckler, Secretary of the Department of Health and Human Services (HHS); the Department of HHS; John Cuddy, Director of the Ohio Department of Public Welfare (ODPW); the ODPW, Mary Harris, Director of the Montgomery County Welfare Department (MCWD); the MCWD, Ronald E. Rockwell, Director of the Clarke County Welfare Department (CCWD); and the CCWD.[2]

In their complaint, and in support of their motion for a preliminary injunction,

---

**1.** Counsel have informed the Court that the $222.00 upper limit was in part the result of a settlement agreement early in 1982 in similar but unrelated litigation in this district: *Bohl v. Harris,* Case No. C–1–79–625 (S.D.Ohio). *See also, Bohl v. Harris* [1979–1980 Transfer Binder] Med. & Med. Guide ¶ 30, 097 (S.D.Ohio 1979) (Rubin, J.) (reporting sustaining of preliminary injunction motion); Plaintiffs' Brief, Doc. # 5, pp. 26–28. None of the Plaintiffs herein were part of the *Bohl* case, and none of the parties

herein assert that *Bohl* has any collateral estoppel or res judicata effect on this case.

**2.** Plaintiffs originally brought suit against Thomas R. Donnelly, Jr., acting Secretary of HHS. Margaret M. Heckler was substituted as a party defendant for Donnelly upon her confirmation as Secretary of HHS. Doc. # 18. In addition, four of the original plaintiffs were voluntarily dismissed on their own motion. Doc. # 19.

Plaintiffs advance eight separate causes of action (or rationales supporting the motion) in asserting that the above-mentioned state and federal regulations are invalid. Their arguments are as follows:

(1) the regulations violate 42 U.S.C. § 1396a(a)(17)(c), in that same do not provide for a "reasonable evaluation" of available income and resources of the institutionalized spouse;

(2) the state regulation imposes a more restrictive eligibility standard than is permitted under 42 C.F.R. § 435.-733(c) (1982) and 42 U.S.C. § 1396a(a)(17);

(3) the regulations, in determining the property of a spouse, create irrebuttable presumptions which violate the Due Process Clause of the Fifth Amendment to the Constitution;

(4) the regulations impermissibly invade and burden the constitutional "associational, privacy, and marital" rights of the plaintiffs;

(5) in promulgating the state regulation, Defendants violated 42 C.F.R. § 431.-12(e) (1982), by failing to secure the participation of the State Medical Care Advisory Committee (MCAC);

(6) the failure to uniformly implement the state regulation throughout Ohio violated 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50(b) (1982);

(7) the Secretary of HHS made no actual comparison of the new state regulation to Ohio's Medicaid plan as it existed in 1972, as required by 42 U.S.C. § 1316(a)(1); and

(8) relief should be forthcoming under the Mandamus Act, 28 U.S.C. § 1361.

Jurisdiction of these causes of action is predicated on 5 U.S.C. §§ 702–704, 28 U.S.C. §§ 1331, 1343(3)–(4), and is not contested by the Defendants.

In conformity with Fed.R.Civ.P. 65(d), the Court sets out its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

Based upon the record, and upon evidence introduced at the April 8, 1983, hearing, the Court makes the following findings of fact.

1. Plaintiffs are four married couples, consisting of a husband institutionalized in a nursing care facility, and a noninstitutionalized wife. They are all over 50 years of age. (Complaint, ¶¶ 7–18, 23–26).

2. Under Ohio Adm.Code § 5101:1–39–22, the institutionalized spouses are permitted to contribute $222.00 toward their spouse's support for each month. The monthly expenses of the noninstitutionalized spouses were and are in excess, by at least $100.00 or more, of this amount. (Complaint, ¶¶ 1, 7–18, 23–26; Plaintiffs' affidavits attached to complaint; testimony of Dorothy Willoweit and Gladys Tharp).

3. The institutionalized spouses have relatively severe physical and/or mental impairments, and are expected to be confined to their respective institutions for the remainder of their lives. (Complaint, ¶¶ 7–18, 23–26; testimony of Dorothy Willoweit, Robert Beason, Gladys Tharp and James Lauricella).

4. At least one of the institutionalized Plaintiffs, Herbert Willoweit, is in default in payments to his institution. Others may default in the near future. This default is due, at least in part, to the unwillingness of the institutionalized Plaintiffs to adhere to limits on support for the noninstitutionalized spouse found in the new Ohio regulation. If such payments are not made up in two or three months, the nursing home administrator would have no choice but to eventually discharge the resident. (Testimony of James Lauricella and Robert Beason; Complaint, ¶ 1).

5. None of the institutionalized patients has been served with a notice of discharge, as required by Ohio Rev.Code Ann. § 3721.-16 (Page 1982). (Testimony of James Lauricella and Robert Beason).

6. While officially promulgated in June of 1982, Ohio Adm.Code § 5101:1–39–22 was not implemented until early in 1983.

(Testimony of Rose Ann Benson, James Lauricella and Robert Beason).

7. The Ohio regulation was not promulgated in a uniform manner throughout the state, in that the welfare departments of Montgomery, Greene and Lake counties informed recipients that the regulation would be implemented in June, July and August of 1982, respectively. (Complaint, ¶ 64; Doc. # 5, exs. C–J).

8. The Ohio regulation was not reviewed by the Ohio Medical Care Advisory Committee (MCAC) prior to promulgation. (Complaint, ¶¶ 61–62; exs. L–M attached to the complaint).

9. At the time that the Ohio regulation was approved by the Department of HHS, the Department of HHS did not have a written copy of Ohio's 1972 Medicaid plan and did not compare the Ohio regulation with the specific provisions of Ohio's 1972 written Medicaid plan. (Stipulation of the Plaintiffs and the federal Defendants, Doc. # 16).

10. In January of 1972, Ohio had three cash assistance programs which formed the basis for Medicaid eligibility for the aged, blind, and disabled in Ohio. These programs did not have "flat" cash payments but were based upon flexible standards which depended upon the particular needs of the individual recipients (using disregards, deductions, exclusions, and allowable expenses). (Testimony of Rose Ann Benson; Plaintiffs' Further Memorandum, Doc. # 17, ex. 1).

11. Should an injunction not issue in this case, the Plaintiffs will be injured in that: (1) some or all of the institutionalized spouses may eventually be evicted if their payments to the nursing home continue to be in arrears, or (2) if the institutionalized spouses make up the existing or potential arrearage, their wives would be forced to support themselves on $222.00 a month, which will result in their having to liquidate personal assets, apply for welfare, and take other steps to attempt to increase their income. *See*, Findings of Fact 1–4. Such injury or harm will be irreparable, in that current deprivations could only be inadequately recompensated by a later award of damages. Moreover, any such award could be barred, in whole or in part, by the Eleventh Amendment and principles of sovereign immunity.

12. At least in the near term, issuance of an injunction will not cause substantial harm to other Medicaid recipients in Ohio, or to the State's Medicaid budget. While precise cost estimates are unavailable, the cost to the state of increasing the monthly allowance for Plaintiffs, or others similarly situated (only a small percentage of the *total* number of Medicaid recipients in Ohio), will most likely run to several hundred thousands of dollars, at best, well under one percent of the state's annual Medicaid budget. (Testimony of Rose Ann Benson).

13. Any harm to the Defendants which may result from the issuance of the injunction is outweighed by the harm which has resulted or may result to the Plaintiffs, and the class which they may represent in the future.[3] *See*, Findings of Fact 11–12. In addition, the public interest will be served "in a reasonable determination of Medicaid eligibility"[4] for these Plaintiffs.

## II. DISCUSSION

In this Circuit, it is well established that a District Court, in exercising its discretion to sustain or to overrule a motion for a preliminary injunction, must consider four factors:

---

3. Pursuant to Fed.R.Civ.P. 23, plaintiffs have moved (Doc. # 2) to represent a class defined as
   > Those aged, blind and disabled persons who receive or apply for medical assistance in the State of Ohio through Medicaid who, as a result of the promulgation of the Ohio Administrative Code § 5101:1–39–22, will or have had their Medicaid benefit level reduced or established without a factual determination as to the availability of their income; and their spouses and dependent children.
   
   Doc. # 2, pp. 1–2. This Court has not yet ruled on the motion.

4. *See, Bohl v. Harris, supra,* note 1, at 9735.

(1) Whether the plaintiff has shown a strong or substantial likelihood or probability of success on the merits;

(2) Whether the plaintiff has shown irreparable injury;

(3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

(4) Whether the public interest would be served by issuing a preliminary injunction.

*See, American Motors Sales Corp. v. Runke,* 708 F.2d 202, 205 (6th Cir.1983); *Friendship Materials, Inc. v. Michigan Brick, Inc.,* 679 F.2d 100, 102 (6th Cir. 1982); *Roth v. Bank of the Commonwealth,* 583 F.2d 527, 537–38 (6th Cir.1978), *cert. dismissed,* 442 U.S. 925, 99 S.Ct. 2852, 61 L.Ed.2d 292 (1979); *Mason County Medical Ass'n v. Knebel,* 563 F.2d 256, 261 (6th Cir.1977).

Having considered and balanced these four factors, this Court finds that injunctive relief is properly due to the Plaintiffs, in that Plaintiffs have satisfied the Court that all four factors weigh in their favor. The Plaintiffs and federal Defendants have primarily focused on the "likelihood or probability of success on the merits" factor, in their lengthy and excellent memoranda. For the reasons set forth below, the Court finds that Plaintiffs have demonstrated a "likelihood or probability of success on the merits" on the fifth, sixth, and seventh causes of action advanced in the complaint. *See,* grounds advanced in support of the motion for a preliminary injunction, *supra,* at 868, 869.

The Court emphasizes that these grounds set forth certain *procedural* inadequacies in the promulgation of the Ohio regulation in question. Having determined that certain procedural requisites were not met, the Court finds it unnecessary to determine if the Ohio or federal regulations at issue violated *substantive* provisions of the Medicaid statute, or any provisions of the United States Constitution. This Court's forebearance in reaching the interesting and difficult substantive issues presented in this case is amply supported by the well-settled reluctance of federal courts to decide constitutional issues if statutory grounds will resolve a case. *See, Exxon Corp. v. Eagerton,* —— U.S. ——, 103 S.Ct. 2296, 2305, 76 L.Ed.2d 497 (1983); *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288, 346–48, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936) (Brandeis, J., concurring). Moreover, the Ohio regulation's procedural invalidity may well render moot (*cf.* discussion, *infra,* as to proper remedy in this case) the remaining substantive issues. If this Court were to rule, at least at this time, on same, it would in effect be an advisory opinion forbidden by Article III of the Constitution. *See, Flast v. Cohen,* 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968).

At the outset, the Court must point out the scope of review of the federal Defendants' actions in this case. The parties agree that this Court must determine if the Secretary of HHS's decision to approve the Ohio regulation, under 42 U.S.C. § 1316(a)(1), as a "final agency action" was either "arbitrary, capricious and an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A)–(D). *See, Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 414–20, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971); *Shaker Medical Center Hospital v. Secretary of Health and Human Services,* 686 F.2d 1203, 1207 (6th Cir.1982); *Citizens Committee Against Route 675 v. Lewis,* 542 F.Supp. 496, 521 (S.D.Ohio 1982). In the context of the present motion for preliminary injunctive relief, of course, the Court is limited to determining if Plaintiffs have demonstrated a strong or substantial "likelihood or probability" of establishing that the Secretary's approval was "arbitrary, capricious and an abuse of discretion, or otherwise not in accordance with law."

The Court now considers the three grounds advanced by Plaintiffs in support of their motion, which this Court finds dispositive on their motion seeking preliminary injunctive relief:

## A. Failure to Secure Participation of Ohio Medical Care Advisory Committee

Among the myriad requirements that the Medicaid statute imposes on state plans for medical assistance is that a plan must "provide ... such methods of administration ... as are found by the Secretary to be necessary for the proper and efficient operation of the plan." 42 U.S.C. § 1396a(a)(4)(A). To implement this provision, a federal regulation requires that each State participating in Medicaid establish a Medical Care Advisory Committee (MCAC) "to advise the Medicaid agency director about health and medical care services." 42 C.F.R. § 431.12(b) (1982). The regulation also provides that the MCAC "must have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program." 42 C.F.R. § 431.12(e). Ohio has established a MCAC under Ohio Rev.Code Ann. § 5101.47 (Page 1982).

It is undisputed that the state regulation in this case was not reviewed before promulgation (or at any other time) by the Ohio MCAC. Finding of Fact 8. Thus, it seems difficult to refute Plaintiffs' position that 42 C.F.R. § 431.12(e) was violated, in that the Ohio MCAC did *not* "have opportunity for participation" in the development of the Ohio regulation. The federal Defendants argue, however, that "the State need not consult the [MCAC] with respect to changes in levels of eligibility," Defendants' Brief, Doc. # 12, p. 27, based on their reading of the Medicaid statute and regulations. *Accord,* State Defendants' Brief, Doc. # 21, pp. 12–13. For the following reasons, the Court does not find their arguments to be persuasive.

Defendants argue that 42 C.F.R. § 431.12 does not require that the MCAC be consulted "in every area of the State's administration of its Medicaid program," par-

ticularly where (they contend), as here, "the State's action was taken in order to bring its policy into conformity with federal regulations." Defendants' Brief, Doc. # 12, p. 27. Only allocation of services, rather than eligibility issues, need be reviewed by the MCAC under Defendants' theory. *Id.* The Court agrees with Defendants that their interpretation of the regulation is entitled to some deference, Defendants' Brief, Doc. # 20, p. 18; *Shaker Medical Center Hospital v. Secretary of Health and Human Services, supra,* 686 F.2d at 1208, *unless* it is "unreasonable or inconsistent with statutory authority." *Charleston Memorial Hospital v. Conrad,* 693 F.2d 324, 332 (4th Cir.1982). *See also, Shaffer v. Block,* 705 F.2d 805, 810 n. 7 (6th Cir.1983).

■ Defendants' interpretation of 42 C.F.R. § 431.12 is not reasonable. Unless otherwise defined, the words making up regulations, as in statutes, *e.g., American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982); *Shaffer v. Block, supra,* 705 F.2d at 811, should be given "their ordinary, contemporary, common meaning." *Nickols v. Pierce,* 556 F.Supp. 1280, 1292 (S.D.Ohio 1982). The regulation in question states that the MCAC "*must* have opportunity for participation in *policy development* and program administration." 42 C.F.R. § 431.12(e) (emphasis added). Use of a broad, inclusive term such as "policy development" does not admit the limiting construction advanced by Defendants.[5] Nor has case law interpreting that regulation adopted any such distinction. *See, e.g., Morabito v. Blum,* 528 F.Supp. 252, 263–64 (S.D.N.Y.1981) (rejecting quality of health care services/eligibility of medical recipients distinction for types of state decisions which MCAC must review). While there might be some support for the notion that a MCAC need only review "significant" program or policy changes, *cf., Mississippi Hospital Ass'n, Inc. v. Heckler,* 701 F.2d

5. The "common meaning" rule need not be followed if there is legislative history to the contrary. *American Tobacco Co. v. Patterson, supra.* However, this Court did not uncover, nor

did the parties cite, any legislative history, or commentary accompanying the promulgation of the federal regulation in question, which might support Defendants' position.

511, 523 (5th Cir.1983), the change in eligibility levels at issue herein (even accepting Defendants' characterization of the change as mere "conformity" to federal regulations) would seem to be an important and significant policy decision, potentially affecting hundreds or thousands of institutionalized Medicaid recipients and their spouses. Defendants' failure to consult the MCAC, prior to promulgation of the Ohio regulation, prevented the MCAC from discharging its advisory function. *Burgess v. Affleck,* 683 F.2d 596, 599 (1st Cir.1982); *Morabito v. Blum, supra,* 528 F.Supp. at 264–65.

Finally, the Court notes that a Sixth Circuit decision, *Benton v. Rhodes,* 586 F.2d 1 (6th Cir.1978), *cert. denied,* 440 U.S. 973, 99 S.Ct. 1539, 59 L.Ed.2d 791 (1979), does not compel a different result. That case involved the reduction of certain Medicaid benefits by the ODPW. At issue was whether the state had complied with 45 C.F.R. § 205.10 (1982), which requires, *inter alia,* that states shall provide hearings to program recipients who feel aggrieved by any reduction of assistance. The Court construed the regulation and Medicaid statute as not requiring hearings for reduction or termination of *optional* benefits. 586 F.2d at 3. The Court added that "[w]e are further of the view that the [MCAC] was sufficiently apprised of the problems. It was not necessary for the state officials to obtain the consent of the Committee to the reduction of the optional benefits." *Id.*

Unlike *Benton,* the within matter does not involve mere review of "optional" benefits on an individualized basis. Instead, this case concerns benefits due plaintiffs and all others similarly situated, that is, institutionalized Medicaid recipients and their spouses. *See generally, Jennings v. Alexander,* [1981–1 Transfer Binder] Med. & Med. Guide (CCH) ¶ 30, 735 (M.D.Tenn. 1980), slip op. at 6–9, *vacated and remanded on other grounds,* 715 F.2d 1036 (6th Cir.1983). Moreover, the MCAC in *Benton* "was sufficiently apprised" of the State's action therein. 586 F.2d at 3. Arguably, the "advisory function" of the MCAC had, in effect, been partially or totally met in

that case. *Cf. Coalition of Michigan Nursing Homes, Inc. v. Dempsey,* 537 F.Supp. 451, 461–62 (E.D.Mich.1982). In contrast, in this case Defendants have conceded that the Ohio MCAC was never "apprised" or informed in any way of the decision to adopt the Ohio regulation at issue herein. Thus, the advisory function of the MCAC was not fulfilled in this case, and Plaintiffs have demonstrated a substantial likelihood or probability of success on this ground in support of their motion for preliminary injunctive relief.

### B. *Failure to Uniformly Implement Regulations Throughout Ohio*

Under the Medicaid statute, a "[s]tate plan for medical assistance must provide that it shall be in effect in all political subdivisions of the State, and, if administered by them, be mandatory upon them." 42 U.S.C. § 1396a(a)(1). A companion regulation states, *inter alia,* that "[t]he plan will be in operation statewide through a system of local offices, under equitable standards for assistance and administration that are mandatory throughout the state." 42 C.F.R. § 431.50 (1982). Plaintiffs argue that these provisions compel the operation of "the Medicaid program in a uniform manner throughout the state." Plaintiffs' Brief, Doc. # 5, p. 22. Case law interpreting these provisions seems to be in accord. *See, Bay Ridge Diagnostic Laboratory, Inc. v. Dumpson,* 400 F.Supp. 1104, 1106 (E.D.N.Y.1975); *Smith v. Vowell,* 379 F.Supp. 139, 156 (W.D.Tex.), *affirmed without published opinion,* 504 F.2d 759 (5th Cir.1974).

Evidence presented by Plaintiffs demonstrates that the uniformity requirement was not met in this case. The Ohio regulation in question was promulgated in June, July, and August of 1982, in Montgomery, Greene and Lake counties, respectively. Finding of Fact 7. It is not clear how and when the regulation was promulgated in other Ohio counties, or if the regulation was *implemented* in a uniform manner in 1983. *Cf.* Finding of Fact 6; Plaintiffs'

Brief, Doc. # 17, p. 18 n. 9; State Defendants' Brief, Doc. # 21, pp. 14–15.

Defendants acknowledge this lack of uniformity. However, they apparently view this defect as a *de minimus* one, and argue that "[i]nstead of enjoining the implementation of the amendment, the court should determine whether the amendment has now been implemented state-wide. If so, then the defect has been cured." Defendants' Brief, Doc. # 12, p. 28. As noted above, the record does not make clear whether, as of this time, the regulation has been promulgated and implemented in a uniform manner throughout Ohio. But that question does not detract from Defendants' candid concession that the Ohio regulation was not "in operation state-wide" in a uniform manner. It is thus clear that Plaintiffs have demonstrated a strong likelihood of success on the merits of this ground in support of their motion.

C. *Failure of Secretary of HHS to Make an Actual Comparison of the New State Regulation to Ohio's Medicaid Plan as it Existed in 1972*

As noted above, Ohio, as a " § 209(b) option" state, is required, at the least, to aid those individuals who would have been eligible for assistance under the state Medicaid plan in effect on January 1, 1972. *See*, 42 U.S.C. § 1396a(f); 42 C.F.R. § 435.-121 (1982). To receive matching funds from the federal government, 42 U.S.C. § 1396b, the State must submit its plan, or any amendment thereto, to the Secretary of HHS for her approval. 42 U.S.C. § 1316 (West Supp.1983). "Whenever a State plan is submitted to the Secretary by a State for approval ... he shall, not later than 90 days after the date the plan is submitted to him, make a determination as to whether it conforms to the requirements for approval" under the relevant Medicaid provisions. 42 U.S.C. § 1316(a)(1).

It is agreed that the Secretary never compared the Ohio regulation (i.e., an amendment to Ohio Medicaid plan) with Ohio's Medicaid plan of 1972. *See*, Finding of Fact 9. Plaintiffs argue that this failure

demonstrates that the Secretary could not have determined, as required by 42 U.S.C. § 1316(a)(1), whether the Ohio regulation was more restrictive than Ohio's 1972 plan. If the amendment *was* more restrictive, Plaintiffs conclude, then the new regulation would be invalid under 42 U.S.C. § 1396a(f).

Defendants acknowledge that no comparison was made, although they contend that it would be difficult to "reconstruct" a copy of Ohio's 1972 plan for comparison purposes. Defendants' Brief, Doc. # 12, pp. 23–24 n. 12. In the absence of such a plan, Defendants continue, "the Secretary must be able to resort to extrinsic evidence in order to determine whether a amendment is approvable." *Id.*, p. 23 (footnote omitted). However, Defendants vigorously argue that a comparison is ultimately unnecessary and would now be a "needless waste of time," Defendants' Brief, Doc. # 20, p. 7, since Ohio's regulation is *not* more restrictive than Ohio's 1972 plan. *Id.*, pp. 7–8. Moreover, Defendants contend that § 1396a(f) does *not* require the Secretary to make the specific comparison which Plaintiffs desire, since that provision only mandates that a *single* standard be applied (i.e., the general aged, blind or disabled cash assistance standards as of 1972) to the new Ohio regulation. Defendants reject the notion that the "standard" in 1972 was a "flexible needs" one, based on individualized determinations. Even if it was, Defendants conclude that no "detailed comparison" is necessary, since "that maximum level established by the 209(b) option, when it became effective in 1974 was clearly lower than the State's current protected level ...." *Id.*, p. 10.

At the outset, the Court acknowledges the difficulty of the issue presented on this point. Nevertheless, the Court must conclude that while Defendants' arguments are not without force, the Plaintiffs are ultimately correct that a comparison of the new regulation with the 1972 plan is necessary. First, a fair review of the evidence in the record, including Mrs. Benson's testimony, leads to the conclusion that Ohio's

standard in 1972 *was* a "flexible" one, based on various individualized determinations. *See,* Finding of Fact 10; Plaintiffs' Brief, Doc. # 17, pp. 4–6. The existence of a "flexible needs" standard makes it impossible to state, as Defendants wish the Court to do, that the Ohio regulation is *not* more restrictive than the 1972 plan. Second, Plaintiffs appear to be correct in arguing that there is a strong probability that the "maximum level" in 1972 would *exceed* the current standards, at least for some individuals, when various actual expenses were added up. *Id.,* p. 6. Given this conclusion, there is a probability that a comparison of the new regulation with the 1972 plan could reveal a violation of 42 U.S.C. § 1396a(f).

The Court is cognizant of the statutory language and legislative history cited by Defendants, Defendants' Brief, Doc. # 20, pp. 4–6 (*i.e.,* the "extrinsic evidence" previously referred to), which seems to imply that the Secretary need not, in general, "administer" any "special needs" expenses which a state may wish to budget and pay to Medicaid recipients. However, the Court is not compelled to give talismanic authority to the use of the singular "standard" in 42 U.S.C. § 1396a(f), and even the legislative history seems to leave open the door, in some (perhaps a very few) circumstances, to a review of a "special needs" state standard(s) by the Secretary, when she is contemplating approval of a plan.

Nor is the Court oblivious to the difficulties, emphasized by Defendants, in "reconstructing" the 1972 Ohio plan. But Defendants have not claimed that such a reconstruction is impossible. Plaintiffs contend that other sources could aid in determining what the provisions were in 1972. *See also, In re Madeline Marie Nursing Homes,* 694 F.2d 433, 446 & n. 15 (6th Cir.1982) (case involved reimbursement of Medicaid expenses for nursing home; discusses presentation of copies of Ohio's Medicaid Plan for 1972, or by "other forms of documentary evidence" in lieu thereof).[6]

In short, the Court holds that Plaintiffs have demonstrated a substantial likelihood or probability of success on their argument that a comparison of the new regulation and Ohio's 1972 Medicaid plan was not made as was required by applicable regulations and that said failure to compare is fatal to the successful implementation of the new regulation. This result follows whether the Court looks to 42 U.S.C. § 1316(a)(1), which seems to require a comparison in *every* case, or to the "extrinsic evidence" (i.e., the Benson testimony and other evidence in the record) advanced by defendants (assuming, arguendo, the latter course is permissible).

## III. CONCLUSIONS OF LAW

■ 1. Plaintiffs have established a substantial likelihood or probability of suc-

---

**6.** Two other points raised by Defendants deserve mention. First, Defendants argue that their position regarding the lack of necessity for comparison is supported by reference to 42 U.S.C. § 1396n(f) (West Supp.1983), which provides that state Medicaid plan amendments "shall be deemed granted unless the Secretary ... denies such request in writing ...." Taken out of context, this provision might seem to conflict with, or limit, 42 U.S.C. § 1316(a)–(b) (requiring Secretary to affirmatively *approve* state Medicaid plans and amendments). However, the legislative history of this provision, enacted in 1981, indicates that it was primarily intended to permit states to change plans to limit the participation of certain health care providers, for reasons unrelated to the present litigation. *See,* H.R.Conf.Rep. No. 208, 97th Cong., 1st Sess. 963–64 (1981), *reprinted in* [1981] U.S.Code Cong. & Adm.News 1010, 1325– 26. Moreover, Defendants do not contend that

§ 1396n(f) was, in fact, the vehicle for the approval of the Ohio regulation at issue herein.

Second, Defendants assert that most of the "special needs" expenses in existence in 1972 "only applied when the recipient spouse was living with the 'dependent spouse.' " Defendants' Brief, Doc. # 20, p. 7. Other expenses were for the recipient himself, not for his spouse. *Id.,* pp. 8–9. Even if this characterization of the evidence in the record is correct, *cf.,* Finding of Fact 10, there would still seem to be a probability that the "maximum level" in 1972 would exceed the current standards, at least for some individuals.

Finally, it is worth noting that even if the Court is incorrect in its conclusion that a comparison of the Ohio regulation with the 1972 plan is necessary, the other "procedural" defects established by Plaintiffs would nonetheless justify the issuance of an injunction by this Court.

cess on the merits of three of their claims, concerning the validity of the approval, promulgation, and implementation of Ohio Adm.Code § 5101:1–39–22.

2. Plaintiffs have shown that they will suffer irreparable harm absent injunctive relief.

3. The risk of injury to Plaintiffs, impacting as it does on their daily living expenses, is greater than the risk of comparatively minimal injury to Defendants. Therefore, the balance of injury between the parties is in favor of the Plaintiffs.

4. The ruling will impact favorably on the public interest, because it will permit the Medicaid statute, and attendant federal and state regulations, to be administered in a reasonable and correct manner.

5. Plaintiffs do not have an adequate remedy at law for any injuries they have suffered or will suffer.

6. Plaintiffs' motion for injunctive relief must be granted, due to their having met the four requisites for the issuance of a preliminary injunctive under case law of the Sixth Circuit.

7. Defendants' motion to dismiss or for summary judgment is overruled to the extent it is inconsistent with Conclusion of Law 6. The motion is not ruled upon in all other respects.

## IV. FURTHER PROCEDURES SET

In summary, the Court must grant Plaintiffs' motion for a preliminary injunction, since the Ohio regulation is invalid on three "procedural" grounds. As discussed above, this conclusion makes it unnecessary for the Court to address the issue of whether the regulation also violates "substantive" provisions of the Medicaid statute or of the United States Constitution. Depending upon the scope of the preliminary injunction to be afforded Plaintiffs, this Court will retain jurisdiction of the case, and stand ready to consider these latter issues if and when it is necessary.

Given the relatively narrow grounds on which the Court bases its decision, the question of the scope of the preliminary injunction is not an easy one. Presumably, part (or perhaps all) of that relief will require further review of the regulation by the Secretary of HHS, followed by review by the MCAC, and uniform implementation throughout Ohio. As Defendants point out, Defendants' Brief, Doc. # 20, p. 11 n. 9, difficult questions are presented by Plaintiffs' request for relief (*e.g.*, it not being clear what plan should replace the Ohio regulation the Court has ruled invalid). In order to discuss the question of the scope of the preliminary injunction in this case, a conference call will be had at 8:30 a.m. on Thursday, September 15, 1983. Counsel Simmons, Kaminski and Wolff should appear in chambers; other counsel will be contacted by phone. Counsel are also requested to file memoranda on the proper scope of the preliminary injunction by the close of business on Wednesday, September 7, 1983.