783 F.2d 657
 12 Soc.Sec.Rep.Ser. 269, Medicare&Medicaid Gu 35,139
Lucinda TURNER; Asberry Turner; Dorothy Willoweit;
Herbert Willoweit; Fanny Finke; Matthew Finke; Inez
Shupert; John Shupert; Zelma Brooks; Roy Brooks; Gladys
Tharp; and Harlan Tharp, individually and on behalf of all
others similarly situated, Plaintiffs-Appellees,
v.
Margaret HECKLER; United States Department of Health and
Human Services; John Cuddy; Ohio Department of Public
Welfare; Montgomery County Welfare Department; Mary
Harris; Clarke County Welfare Department; and Ronald
Rockwell, Defendants-Appellants.
 No. 84-3108.
 United States Court of Appeals,
Sixth Circuit.
 Argued Dec. 5, 1985.
Decided Feb. 14, 1986.
 
 Gerald F. Kaminski, Asst. U.S. Atty., Dayton, Ohio, David Ruvane Smith argued, Washington, D.C., for defendants-appellants.
 Michael Shuey, Dayton, Ohio, Sheila P. Cooley, Columbus, Ohio, Jeri J. Simmons argued, Dayton, Ohio, Janet Pecquet, Gregory S. French, Pro Seniors, Inc., Cincinnati, Ohio, for plaintiffs-appellees.
 Before KRUPANSKY and MILBURN, Circuit Judges; and BROWN, Senior Circuit Judge.
 BAILEY BROWN, Senior Circuit Judge.
 
 
 1
 The Defendant Secretary of Health and Human Services (Secretary) appeals from a judgment of the district court granting Plaintiffs' request for a preliminary injunction and ordering the Secretary to financially participate in all medicaid benefit payments made to eligible nursing home residents by the Defendant Ohio Department of Public Welfare (ODPW) under an interim settlement agreement executed by the Plaintiffs and the ODPW and adopted as an order of the district court, 573 F.Supp. 867. The only basis for the issuance of injunctive relief against the Secretary was the district court's finding that the Secretary, in violation of 42 U.S.C. Sec. 1316(a)(1), failed to compare the provisions of the state medicaid plan which were in effect on January 1, 1972 (1972 Medicaid Plan) with the amendments to the Plan enacted in Ohio Admin.Code Sec. 5101:1-39-22. Because we find that the district court failed to consider an offer of proof made by the Secretary prior to the issuance of the injunctive order demonstrating that a comparison of the 1972 Medicaid Plan with such amendments to the Plan had been conducted by the Secretary in accordance with the district court's interpretation of the requirements of Sec. 1316(a)(1), we conclude that the district court abused its discretion in issuing the preliminary injunction.
 
 I.
 Introduction
 
 2
 The federal medicaid program, Title XIX of the Social Security Act, 42 U.S.C. Sec. 1396 et seq., was enacted in 1965 to extend financial assistance to states that chose to subsidize certain costs of medical treatment for particular groups of low-income individuals. Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980). States that participated in the federal program were required to extend coverage to persons described as the "categorically needy," i.e., those who received financial assistance under any one of the four federal programs established in the Social Security Act.[1] Schweiker v. Hogan, 457 U.S. 569, 572, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982). In addition, states that chose to offer assistance to the "medically needy--persons lacking the ability to pay for medical treatment, but with incomes too high to qualify for categorical assistance"--received partial federal reimbursement. Schweiker v. Gray Panthers, 453 U.S. 34, 37, 101 S.Ct. 2633, 2636, 69 L.Ed.2d 460 (1981).
 
 
 3
 In 1972, Congress consolidated three of the four categorical assistance programs[2] into one assistance program, the Supplemental Security Income for the Aged, Blind and Disabled (SSI), 42 U.S.C. Sec. 1381 et seq., and assumed sole responsibility for the program funding and eligibility. Id. at 38, 101 S.Ct. at 2637. Under SSI, the number of persons eligible for financial assistance represented, in some cases, an increase in those numbers previously eligible under the categorical assistance programs. Id. This prompted a concern in Congress. As recounted by the Supreme Court in Gray Panthers:
 
 
 4
 Congress feared that [the participating] States would withdraw from the cooperative Medicaid program rather than expand their Medicaid coverage in a manner commensurate with the expansion of categorical assistance. '[I]n order not to impose a substantial fiscal burden on these States' or to discourage them from participating ... Congress offered what has become known as the Sec. 209(b) option. Under it, States could elect to provide Medicaid assistance only to those individuals who would have been eligible under the state Medicaid plan in effect on January 1, 1972. States thus became either 'SSI States' or '209(b) States' depending on the coverage that they offered.
 
 
 5
 Gray Panthers, 453 U.S. at 38-39, 101 S.Ct. at 2637-2638 (footnote omitted).
 
 
 6
 Ohio chose the "Sec. 209(b)" option. Ohio Rev.Code Ann. Sec. 5111.02. In May of 1982, Ohio promulgated Ohio Admin.Code Sec. 5101:1-39-22 (Plan Amendments), amending its existing medicaid plan, and filed for approval with the United States Department of Health and Human Services (Department) pursuant to 42 U.S.C. Sec. 1316(a)(1). The Plan Amendments were approved by the Secretary without the benefit of a copy of the 1972 Medicaid Plan for comparison.[3] Ohio began implementing its amended medicaid plan sometime in early 1983.
 
 
 7
 Under the pertinent terms of Ohio's medicaid plan as amended by Sec. 5101:1-39-22, the nursing home applicant's eligibility for financial assistance was determined by comparing the applicant's net income[4] with the cost of care in the nursing institution. Recognizing that in many instances the income of the applicant was used to support a non-institutionalized spouse, often referred to as a "community spouse," the amended plan permitted a maintenance needs allowance (MNA) for that spouse in the amount of $222 a month. This permitted the applicant to set aside up to $222 of his income per month and not have that amount counted by the state as income for purposes of calculating eligibility.[5] The applicant's contribution for nursing care was calculated by reducing dollar for dollar the amount of the MNA authorized for support of the community spouse by the net income of the community spouse received from outside sources and then deducting the resulting figure from the net income of the medicaid applicant.
 
 II.
 Facts
 
 8
 A class action suit was filed in United States District Court for the Southern District of Ohio on March 4, 1983, against the Secretary and the Department as well as against various state and local welfare agencies in Ohio.[6] The Plaintiffs were four married couples, each couple consisting of a spouse receiving nursing care financial assistance under the amended Ohio medicaid plan and a non-institutionalized spouse who was dependent upon the income of the institutionalized spouse for support and maintenance.
 
 
 9
 Plaintiffs alleged that Ohio's administration of their medicaid plan, as amended by Ohio Admin.Code Sec. 5101:1-39-22, resulted in an impermissible reduction in the amount of income the institutionalized spouse could set aside for the maintenance of the community spouse and thereby unlawfully increased the contribution of the medicaid recipient for the cost of nursing care. Plaintiffs sought to have the district court declare invalid and enjoin enforcement of the Plan Amendments and a federal medicaid regulation, 42 C.F.R. Sec. 435.733(c) (Federal Regulation)[7] on the grounds that both were unconstitutional[8] and violated 42 U.S.C. Sec. 1396a(a)(17)(c) by failing to provide a "reasonable evaluation" of the medicaid recipient's support obligations. Additionally, the complaint charged that the Plan Amendments established a more restrictive medicaid eligibility standard than that permitted by 42 C.F.R. Sec. 435.733(c) and 42 U.S.C. Sec. 1396a(a)(17) and was defective for failure to comply with statutory procedural requirements in its promulgation and administration by the state.[9] In particular, at issue in the instant appeal, Plaintiffs alleged that the failure of the Secretary to compare provisions of the Plan Amendments with the 1972 Medicaid Plan at the time the Department approved the amendments violated 42 U.S.C. Sec. 1316(a)(1).[10]
 
 
 10
 On March 7, 1983, Plaintiffs moved for a temporary restraining order preventing the Defendants from continuing to implement the Plan Amendments and directing the Defendants to make future medicaid payments based on the method of income calculation used prior to the implementation of the amended medicaid plan.[11] The district court granted Plaintiffs' motion on March 10th and, later, at Plaintiffs' request, extended the order until March 31, 1983. Upon the expiration of the district court's order, the Secretary filed a motion to dismiss or in the alternative for summary judgment.
 
 
 11
 On April 8, 1983, the district court held a hearing on Plaintiffs' motion for a preliminary injunction seeking to enjoin continued implementation of the Plan Amendments and the Federal Regulation, as interpreted by the Secretary, and, in an order issued August 25, 1983, overruled in part the Secretary's motion for summary judgment and indicated that it would grant the preliminary injunction.
 
 
 12
 The district court found that Plaintiffs had demonstrated a probability of success on the merits in each of their three claims that the ODPW failed to follow statutory prerequisites in the promulgation and implementation of the Plan Amendments. In particular, the court found that the Plan Amendments had not been reviewed by the MCAC prior to their promulgation in violation of 42 C.F.R. Sec. 431.12(e) and 42 U.S.C. Sec. 1396a(a)(1) and had not been implemented by the ODPW in a uniform manner throughout the state in violation of 42 C.F.R. Sec. 431.50. The district court also determined that the failure of the Secretary to compare provisions of the Plan Amendments with a copy of the provisions of the 1972 Medicaid Plan before approving the amendments constituted a violation of 42 U.S.C. Sec. 1316(a)(1). This last finding was the only basis for the district court's grant of injunctive relief against the Secretary. As the district court found the issuance of injunctive relief supportable on the failure to follow procedural prerequisites, the court never reached the issues of whether the Federal Regulation or the Plan Amendments violated substantive provisions of the federal medicaid statute or the U.S. Constitution.
 
 
 13
 Although the district court indicated that it would grant Plaintiffs' motion for a preliminary injunction, it did not order injunctive relief at that time and stated that it would resolve the question of the scope of the injunction at a later date after the court had had an opportunity to hold a hearing on the issue and the parties had filed memoranda.
 
 
 14
 The district court convened a hearing on November 3, 1983, where the parties principally discussed the possibility of an interim settlement or agreement which would obviate the need for any affirmative relief by the court. The issue of notice to eligible nursing home residents informing them of a possible entitlement to retroactive medicaid benefits was also addressed. The district court indicated in the hearing that it intended to issue an injunctive order that afternoon or early the following week mandating a return to the method of calculating medicaid eligibility employed by the state prior to the implementation of the Plan Amendments. The court further stated that the effective date of the injunctive order would be delayed until twenty-four hours after a ruling by the court on whether the procedural deficiencies indicated by the court in its August 25th order had been rectified.[12] In the event the deficiencies were corrected, the injunctive order would not become effective and the court would retain jurisdiction to consider Plaintiffs' remaining statutory and constitutional objections to the regulations. The district court set a hearing date for November 10th at which time the court would consider the pending motion for class certification and entertain any evidence of rectification of the procedural deficiencies presented by the parties.
 
 
 15
 On November 10th, Plaintiffs and the ODPW presented the court with a proposed interim agreement or settlement. The proposed order, objected to by the Secretary, provided for notice to nursing home residents in Ohio who received an MNA under the state medicaid plan informing them that they may be entitled to retroactive benefits. The agreement provided for an increase in the amount of the MNA from $222 to $258 and defined a "spouse-in-need," i.e., one entitled to receive an MNA, as one who received less than $324 per month in income from other sources.[13]
 
 
 16
 On November 28, 1983, the district court adopted the interim agreement and issued it as an order of the court.[14] At the request of the Plaintiffs and the ODPW, the district court ordered the Secretary to financially participate in all payments made by the ODPW under the order. The order was to expire at such time as a decision was made on the merits of the remaining claims raised in Plaintiffs' complaint.[15]
 
 III.
 Discussion
 
 17
 Our inquiry in the present case is a narrow one as the only issue before us is whether the district court abused its discretion in issuing the preliminary injunction ordering the Secretary to financially participate in all payments made by the ODPW under the order of the court issued November 28, 1983. We need not address the merits of this case any further than necessary in order to determine whether there has been an abuse of discretion. Adams v. Federal Express Corp., 547 F.2d 319, 323 (6th Cir.1976).
 
 
 18
 As outlined by this court in Mason County Medical Association v. Knebel, 563 F.2d 256 (6th Cir.1977), there are four factors or guidelines we must consider in evaluating the propriety of an issuance of a preliminary injunction:
 
 
 19
 1. Whether the plaintiffs have shown a strong or substantial likelihood or probability of success on the merits;
 
 
 20
 2. Whether the plaintiffs have shown irreparable injury;
 
 
 21
 3. Whether the issuance of a preliminary injunction would cause substantial harm to others;
 
 
 22
 4. Whether the public interest would be served by issuing a preliminary injunction.
 
 
 23
 Id. at 261.
 
 
 24
 The Secretary contends that the district court abused its discretion in issuing the preliminary injunction, because the court failed to consider evidence presented by the Secretary demonstrating that it had compared the provisions of the Plan Amendments with a copy of the 1972 Medicaid Plan. We agree.
 
 
 25
 The record before us clearly indicates that prior to the issuance of the injunctive order by the district court on November 28, 1983, the Secretary proffered evidence to the court indicating that it had corrected and rectified the alleged procedural deficiency found in the August 25, 1983 order.[16] The pertinent portion of the transcript of the November 10th hearing reads:
 
 
 26
 Counsel for the Secretary: The only other point I would add is that the Federal Government was ready to go forward today on the proceeding that the Court had set forth on whether they had cured the procedural defect that the Court had found in its prior findings of fact. And the proffer of proof on that would be that the State defendants last week, on November 2d, traveled to the Chicago regional office, bringing with them the 1972 plan, the State plan. They gave the State plan, along with the Ohio regulation, to the officials of the Health and Human Services in Chicago. The plan was reviewed and a letter of approval or reaffirming the prior approval was given to the State defendants November 2nd. That's the only other thing I would add.
 
 
 27
 Court: Mr. Kaminski, thank you.
 
 
 28
 While the Secretary contends that the statute does not require that she make the comparison with a copy in hand and that she may rely on extrinsic evidence for this purpose, we need not decide this issue, since it appears that the Secretary had made this comparison and her counsel had represented to the court that such had been done prior to the issuance of an injunction granting relief against her. The district court, however, failed to appreciate that the Secretary's counsel had proffered evidence that the only basis for injunctive relief against her had been cured. Accordingly, when the injunction was issued against the Secretary, the record did not support a finding of a likelihood of success.
 
 
 29
 Accordingly, the judgment of the district court is reversed and the case remanded for further proceedings consistent with this opinion.
 
 
 
 [1]
 The "categorically needy" were persons viewed by Congress as particularly deserving of public assistance because of unique family circumstances, age or disability. Four categories of assistance programs were initially designed to aid these individuals. They were Old Age Assistance (OAA), Aid to the Blind (AB), Aid to the Permanently and Totally Disabled (APTD) and Aid to Families with Dependent Children (AFDC)
 
 
 [2]
 The AFDC program remained a state-operated and jointly-funded assistance program
 
 
 [3]
 The Secretary stipulated that she did not have a copy of the 1972 Medicaid Plan at the time she approved the Plan Amendments
 
 
 [4]
 The term "net income" is intended to mean gross income adjusted by the state for certain expenses and allowances
 
 
 [5]
 The amount of the applicant's income which may be set aside for the maintenance needs of the spouse is often referred to as the "protected amount."
 
 
 [6]
 The instant action was originally brought against the Montgomery County Welfare Department, the Clarke County Welfare Department and the Ohio Department of Public Welfare. Additionally, Plaintiffs joined as defendants the directors of these agencies in their individual and official capacities
 
 
 [7]
 Section 435.733(c) provides:
 The agency must deduct the following amounts, in the following order, from the individual's total income including amounts disregarded in determining eligibility:
 * * *
 (2) For an individual with only a spouse at home, an additional amount for the maintenance needs of the spouse. This amount must be based on a reasonable assessment of need but must not exceed the higher of--
 (i) The more restrictive income standard established under Sec. 435.121; or
 (ii) The medically needy standard for an individual;
 * * *
 The Secretary interprets this regulation to mean that the only amount of income which may be "protected" or set aside from the medicaid patient's income for the support of his or her spouse is the amount of the MNA provided by the state. Therefore, to the extent that the community spouse receives income from other sources, the amount of the MNA must be reduced. Plaintiffs contend that, properly interpreted, the regulation does not require a dollar for dollar reduction of the MNA by the amount of such outside income.
 
 
 [8]
 Plaintiffs contended that the federal and state regulations at issue, in defining the income of the medicaid applicant, unconstitutionally created an irrebuttable presumption, contrary to Ohio law, that the wife had no legal interest in her spouse's income and invaded their "associational, privacy and marital" rights protected under the first and fourteenth amendments
 
 
 [9]
 Plaintiffs alleged that the ODPW failed to secure the participation of the state Medical Care Advisory Committee (MCAC) in promulgating the Plan Amendments, in violation of 42 C.F.R. Sec. 431.12(e) and that the ODPW failed to uniformly implement the amendments in contravention of 42 U.S.C. Sec. 1396a(a)(1) and 42 C.F.R. Sec. 431.50(b)
 
 
 [10]
 In connection with their claim that the Secretary failed to properly review the Ohio amendments, Plaintiffs sought a writ of mandamus compelling the Secretary to compare the terms of the Plan Amendments with the terms of the 1972 Medicaid Plan and make the required determination under 42 U.S.C. Sec. 1396a(f)
 
 
 [11]
 It is unclear from the record before us precisely what method of determining medicaid eligibility was utilized by the state prior to the implementation of the Plan Amendments
 
 
 [12]
 In an earlier order issued prior to the November hearings, the district court advised counsel that if the procedural deficiencies were corrected before trial, counsel was to approach the court and seek modification or dissolution of the injunctive order
 
 
 [13]
 Only income received by the community spouse from other sources in excess of $324 per month would reduce the amount of the MNA. This component of the agreement is the only part to which the Secretary objects as being contrary to the Federal Regulation
 
 
 [14]
 The district court indicated at the time it approved the terms of the interim agreement that it felt that the interpretation of 42 C.F.R. Sec. 435.733(c) by the Plaintiffs and the ODPW ought to be followed in spite of the deference normally accorded the Secretary in such matters
 While the Secretary contends that the district court's interpretation of the applicable regulation is erroneous and that, in any event, the Secretary's interpretation is not arbitrary or capricious and therefore must be accepted, we need not resolve this issue since, as stated, the only grounds for the court's finding of likelihood of success was that the Secretary had failed to compare the Plan Amendments with a copy of the 1972 Medicaid Plan. Though we do not rule on the propriety of the court's decision, we merely note that an agency's interpretation of its own regulations should be given great deference. University of Cincinnati v. Heckler, 733 F.2d 1171, 1173-74 (6th Cir.1984); Shaker Medical Center Hospital v. Secretary of Health and Human Services, 686 F.2d 1203, 1208 (6th Cir.1982).
 
 
 [15]
 On March 9, 1984, Ohio submitted the pertinent provisions of the interim agreement to the Department, proposing to make the terms a permanent part of the state medicaid plan. The Secretary disapproved of the submitted proposals on June 14, 1984. Ohio sought reconsideration of the Secretary's decision. The parties agreed to submit the case to a hearing officer for reconsideration. There is no indication in the record of a final decision having been reached in the matter
 
 
 [16]
 The record indicates that the Secretary at the November 3rd hearing attempted to proffer evidence demonstrating that she had obtained a copy of the 1972 Medicaid Plan and reviewed the Plan Amendments, reaffirming her earlier approval. The district court, however, refused to consider such evidence at the time and stated that the issue of rectification was reserved for discussion at a future hearing